**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Fred HILL, Defendant-Appellant.**

**No. 85-2739.**

United States Court of Appeals,
Tenth Circuit.

Aug. 11, 1986.

Frank Michael Ringer, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on brief), Oklahoma City, Okl., for plaintiff-appellee.

David E. Booth, Federal Public Defender (Steve Soltis, Asst. Federal Public Defender, on briefs), Oklahoma City, Okl., for defendant-appellant.

Before BARRETT and ANDERSON, Circuit Judges, and BROWN,* District Judge.

BARRETT, Circuit Judge.

This is an appeal by Fred Hill (Hill) from an Order of Sentence entered by the United States District Court for the Western District of Oklahoma following Hill's conviction on two counts of transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314. Hill does not challenge his conviction. Rather, he challenges the district court's Order of Sentence insofar as it requires Hill to pay restitution to the victim in the amount of $148,330.00.

Hill was employed as a warehouseman by the Crown Heritage Corporation (Crown) at its Oklahoma City, Oklahoma office from August, 1982 to May, 1984. Crown is a wholesale distributor of animal health care products. In the fall of 1983, Crown's president, Gordon Harrison, became aware of losses of a steroid implant marketed under the name "Ralgro." He attributed this loss to an inventory discrepancy resulting from the installation of a new computer at Crown. (R., Vol. II, p. 14.)

In March, 1984, the Ralgro losses came to Harrison's attention again and this time theft was suspected. Later in the spring of 1984, Harrison placed specially marked packages of Ralgro, lot number 40138, in Crown's warehouse. The stock was checked every two hours. Between May 3 and May 14, 1984, about 1000 "reels" or units of Ralgro valued at $20.00 per reel, were reported missing. On one occasion,

---

* The Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

Hill was observed removing some of the Ralgro from the warehouse to his pickup truck.[1] The reels were ultimately confiscated by the Federal Bureau of Investigation (FBI) from a Springfield, Missouri, retailer, Preferred Farmers', Inc. About $7,000.00 worth of Ralgro lot number 40138 was returned to Crown.

Hill was arrested and pled not guilty to a three-count indictment. Count III of the indictment was later dismissed by the Government. Trial was held before the court on September 9, 1985, and Hill was found guilty as charged in Counts I and II of the indictment.

At trial, Sam Jones, owner of Oak Ridge Farm Supply of Springfield, Missouri, who was distantly related to Hill and had known him for 20 years, testified as an immunized Government witness that beginning in the fall of 1983 and continuing until May, 1984, he occasionally purchased Ralgro from Hill. These transactions always took place in Missouri and Hill was always paid in cash. Jones stated he purchased the Ralgro for approximately $10.00 to $12.00 per reel, well below the retail price. Jones identified two invoices, one dated May 1 and the other May 15, 1984, recording the sales of 400 and 600 reels of Ralgro respectively, to Preferred Farmers', Inc. of Springfield. Jones testified that he purchased those units of Ralgro from Hill in Missouri, and subsequently sold them to Preferred Farmers'.

Larry Burks, an owner of Preferred Farmers', Inc., testified that he purchased the 400 and 600 units of Ralgro from Jones as reflected on the invoices. Burks stated these prices were roughly 10% less than the prevailing market price. Burks testified that the reels which were confiscated by the FBI were marked with lot number 40138, the number given Crown's specially marked stock.

On November 14, 1985, Hill was sentenced to a term of two years *without probation* and was ordered to pay restitution of $148,330.00. On March 13, 1986, he filed a motion to Reconsider or Reduce Sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. On March 17, 1986, Hill's Motion to Reconsider was denied and this appeal followed.

The sole issue on appeal is whether the district court erred in ordering restitution of $148,330.00. Hill contends that an award of restitution cannot exceed the amount specified in the indictment. Therefore, the restitution award in this case could not exceed $20,000.00, Crown's loss arising out of the offenses for which he was charged in the indictment: transporting 1000 stolen Ralgro reels in interstate commerce with an approximate value of $20,000.00.

A federal district court's authority to order victim restitution in the sentencing phase of a criminal case arises under the "split sentencing provision" of the Federal Probation Act, 18 U.S.C. § 3651[2] and under the restitution provisions of the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579, 3580. The "split sentencing provision" of the Federal Probation Act authorizes restitution only as a condition of probation. 18 U.S.C. § 3651.[3] Because no probation was ordered in this

---

1. Although Hill did transport some of Crown's stock from time to time, he was not a salesman for Crown and was not authorized either to transport or to sell Ralgro.

2. The Sentencing Reform Act of 1984, to be codified at 18 U.S.C. chapter 232, is scheduled to replace the Federal Probation Act on November 1, 1986. Act of Oct. 12, 1984 Pub.L. No. 98–473, Title II, chap. II, § 212(a)(1), (2), 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1987 (to be codified at 18 U.S.C. § 3551 note).

3. *See generally, United States v. Kallash,* 785 F.2d 26, 30 (2d Cir.1986). The relevant portion of 18 U.S.C. § 3651 (emphasis added) provides as follows:

> *While on probation* and among the conditions thereof, the defendant—
> May be required to pay a fine in one or several sums; and
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and
> May be required to provide for the support of any persons, for whose support he is legally responsible.

case, the Federal Probation Act is inapplicable and restitution could only have been ordered by the district court pursuant to the provisions of the VWPA.

The VWPA was enacted in 1982, and applies to offenses occurring on or after January 1, 1983. 18 U.S.C. § 1512 note. The legislative history of the VWPA indicates that Congress intended to enact a victim compensation scheme "to restore the victim to his or her prior state of well-being" to the highest degree possible. S.Rep. No. 97–532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2536. In section 2 of the VWPA, the Congress declared that among the purposes of the VWPA, was the purpose of insuring "that the Federal Government does all that is possible within limits of the available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant...." Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, § 2, 96 Stat. 1248 (18 U.S.C. § 1512 note).

■ Hill contends that the district court erred in awarding restitution in excess of the amount specified in the indictment. While the language of the Federal Probation Act may have supported such a limitation on restitution,[4] we do not believe an order of restitution under the VWPA should be so limited. The Federal Probation Act provides that a defendant "[m]ay be required to make restitution ... to aggrieved parties for ... loss caused by the *offense for which conviction was had.*" 18 U.S.C. § 3651 (emphasis added). The VWPA does not contain this limiting language and provides that a court may order "the defendant make restitution to any victim of the *offense.*" 18 U.S.C. § 3579(a)(1) (emphasis added).

The difference in the statutory language of the Federal Probation Act and the VWPA notwithstanding, we believe limiting a victim's recovery to the amount charged in the indictment or to particular counts of the offense is unwarranted given the compensatory objectives of the VWPA. The decision of a prosecutor to indict a defendant and the manner in which a defendant is indicted have little, if anything, to do with the objectives of the VWPA. For instance, a prosecutor's decision to charge a defendant for one or more counts of an offense is discretionary, and that discretion is exercised taking into consideration law enforcement objectives which have nothing to do with the congressional objective of compensating crime victims. The decision to specify an amount in the indictment is also often solely for the purpose of satisfying jurisdictional requirements. *See generally* Goldstein, *The Victim and Prosecutorial Discretion: The Federal Victim and Witness Protection Act of 1982,* 47 Law & Contemp.Probs. 225, 234–38 (Aut.1984). In addition, the VWPA specifically provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the *preponderance* of the evidence...." 18 U.S.C. § 3580(d) (emphasis added). Nowhere in the VWPA did Congress limit victim compensation to the indictment, even though it must have been aware of such a limitation given the Federal Probation Act by certain courts. Given the absence of limiting language, the provisions of section 3580(d), and the compensatory objectives of the VWPA, it is reasonable to infer that Congress did not intend to limit victim compensation to the amount specified in the indictment.

---

**4.** There is some division among the circuits on whether restitution under the Federal Probation Act is in fact limited to the amount charged in the indictment. *Compare, e.g., United States v. McMichael,* 699 F.2d 193, 195 (4th Cir.1983) ("actual damages directly caused by the illegal activity with which a defendant is charged may be ordered to be repaid under the Probation Act whenever the amount of the loss is legally determined. This is the rule regardless of the amount charged in the full indictment or in the

individual counts on which a defendant is convicted.") and *United States v. Black,* 767 F.2d 1334, 1343 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985), citing *United States v. Gering,* 716 F.2d 615, 622–25 (9th Cir.1983) ("[s]eeing 'no reason to expand the definition of ... *offense* beyond that circumscribed in the indictment counts,' ... the district judge lacked authority to impose restitution of amounts beyond those alleged in the indictment. *Id.* at 624–25.")

The facts of this case also illustrate why restitution orders under the VWPA should not be limited to the amount specified in the indictment or to the particular counts of an offense. It is uncontested that defendant Hill stole and transported in interstate commerce $20,000.00 worth of Ralgro lawfully owned by Crown. The indictment charged Hill with two counts of transporting stolen property in interstate commerce. Both counts were based on transactions taking place in May, 1984. The evidence adduced at trial, however, indicates that Ralgro was stolen from Crown prior to May, 1984, while Hill was employed as a warehouseman. In addition, witness Sam Jones testified that he had purchased Ralgro from Hill in the same manner as the May, 1984, transactions as early as the fall of 1983; the first time Ralgro was reported missing from Crown.

Further, during the sentencing proceeding, Hill's counsel conceded that Hill received a gain from this criminal transaction of approximately $35,000.00 to $45,000.00, well in excess of the $20,000.00 charged in the indictment. (R., Vol. III, p. 3.) Moreover, in response to the district court's question about what his "figure" was regarding the loss to the victim in this case, defense counsel responded: "Judge, the loss to the victim that was shown at trial, I believe, is $153,000.00." (*Id.*) The record in this case reflects that the losses which Crown claimed in excess of the $20,000.00 charged in the indictment were all caused by the theft of Ralgro; the offense for which Hill was convicted in this case. The trial record also reflects inferentially through the testimony of Sam Jones, that Hill was responsible for these losses. In light of the evidence presented at trial and counsel's statements at the sentencing hearing, to which Hill did not object, it is reasonable to infer that Hill's offense of transporting stolen Ralgro in interstate commerce, involved criminal transactions beyond those of May, 1984, inflicting losses to the victim well in excess of the $20,-000.00 specified in the indictment.

We hold that in determining the amount of loss to a victim for purposes of awarding restitution under the VWPA, a district court is not limited either by the amount specified in the indictment or the specific transactions alleged in the indictment. Taking into consideration the evidence adduced at trial and the evidence presented in the sentencing phase of the case, a district court may order a defendant to pay restitution to any victim for the amount of loss sustained "as a result of the offense," 18 U.S.C. § 3580(a), so long as this amount is supported by a preponderance of the evidence.

While the VWPA provisions provide the district courts greater latitude in compensating crime victims, the VWPA also imposes several procedural requirements which were not in effect under the Federal Probation Act. For example, 18 U.S.C. § 3580(a) requires a district court to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents ..." in addition to the amount of loss sustained by any victim. In *United States v. Watchman*, 749 F.2d 616, 618 (10th Cir.1984), we considered the requirements of the VWPA relating to fact determinations and to procedures and observed: "Congress has placed a duty on the trial courts to make several factual determinations under the Act and to enter specific orders of restitution based on such facts...." In *United States v. Watchman, supra*, we also discussed the policies underlying the VWPA requirements:

A good development of the facts would serve to reduce further litigation on the subject of "losses" by the victim or by the government and reduce the chances of mistakes. Some facts in the record as a basis for the trial court's order of restitution are also necessary should appellate review be necessary.

On the other side of the coin, Congress has imposed a fact gathering requirement as to the defendant. (§ 3580(a)) This includes an ability to pay, thus an examination of financial needs and resources of defendant and of the financial needs of defendant's dependents, "and such other factors as the court deems

appropriate." Here again there is a need to have the basic facts determined in order that the restitution order can carry out the purposes of the Act, and to reduce the risk of a mistake.

Since Congress has mandated these several determinations it must be assumed that Congress also intended that sufficient time be devoted to these matters to assure completeness and accuracy....

*Id.*

■ While appellate courts have no general authority to disturb sentences, they are obligated to examine the method or process by which a sentence is imposed. *Id.* at 619, citing *United States v. Sparrow,* 673 F.2d 862 (5th Cir.1982). The record in this case is void of any factual determinations by the district court except the finding that Crown's loss in this case was in the amount of $148,330.00. We therefore must set aside the order of restitution and remand to the district court for factual determinations consistent with the VWPA, including a finding that the amount of the victim's loss was shown by preponderance of the evidence. The district court's order of restitution is reversed and remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.