**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny Lee TEEHEE,**
**Defendant–Appellant.**

No. 88–3018.

United States Court of Appeals,
Tenth Circuit.

Jan. 5, 1990.

Kim I. Martin (Benjamin L. Burgess, Jr., U.S. Atty., on the briefs), Asst. U.S. Atty., Wichita, Kan., for plaintiff-appellee.

Paul S. McCausland of Gott, Young & Bogle, Wichita, Kan., for defendant-appellant.

Before McKAY and BRORBY, Circuit Judges, and BOHANON,* District Judge.

---

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

BRORBY, Circuit Judge.

Appellant Danny Lee Teehee appeals from the order of the United States District Court for the District of Kansas directing appellant to pay $100,000 in restitution. The court ordered restitution after appellant pleaded guilty to one count of trafficking in unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). We AFFIRM.

## I. Statement of the Facts

On June 23, 1988, appellant pleaded guilty to one count of trafficking in unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). The access devices in question were long-distance telephone access codes issued by U.S. Sprint Communications Company ("U.S. Sprint") to its customers. Over the period of time between June 1986 and July 7, 1987, appellant purchased long-distance telephone service from Robert Berube of Salt Lake City. In return for monthly payments of $150.00 to Berube, Teehee received unlimited access to U.S. Sprint lines. Access to the Sprint system was gained by dialing code numbers provided by Berube on a continuing basis.

An investigation by the United States Treasury Department revealed that in October 1986 Teehee began selling these access code numbers to eight to ten customers. Teehee paid Berube $25.00 out of each $150.00 monthly charge collected from Teehee's customers. Teehee's net gain from the resale of the access codes was in excess of an estimated $8,890.00. Appellant's Brief at 4–5.

It is undisputed that Berube, Teehee, and Teehee's customers did not have the authorization of U.S. Sprint to possess, transfer, sell, or use the access codes. R., Vol. I, Presentence Report at 4. It is further undisputed that the total loss suffered by U.S. Sprint on the thirty-nine access codes totalled between $610,349.10 and $837,356.43. Appellant's Brief at 5.

Prior to sentencing, a presentence report was prepared and submitted to the court and to appellant. Under the heading of Victim Impact Statement, the following statement was provided by the United States Attorney's Office:

"The United States Sprint Communications Company has advised that the total abuse on the U.S. Sprint authorization codes listed on the Indictment against Mr. Teehee was $837,356.43. The United States Sprint Company has given credits, totalling that figure, to its legitimate customers to whom said authorization codes were issued for unauthorized long distance calls not made by such customers. All of the authorization codes listed in the Indictment were obtained by the Secret Service from either the defendant or from customers of the defendant who indicated that they had received the codes from the defendant. It is impossible to tell how much of the $837,356.43 credited to the legitimate Sprint customers can be attributed directly to Mr. Teehee. Mr. Teehee and the persons whom he alleges supplied authorization codes to him were all engaged in the same illegal activity of trafficking in long distance authorization codes. Determining the number of customers to whom each of the offenders may have communicated the authorization codes in question and the number of calls which may have been made by each customer is extremely difficult, if not impossible. Each of the offenders, however, created the circumstances under which U.S. Sprint's loss could occur by engaging in the illegal sale and distribution of the United States Sprint long distance authorization codes. Each offender knew that the persons to whom he sold U.S. Sprint codes could, in turn, sell the codes to others and thereby multiply U.S. Sprint's losses many times over."

R., Vol. I, Presentence Report at 5.

The Presentence Report indicated that Mr. Timothy W. Hearshman, a representative of U.S. Sprint, agreed that it would be impossible to determine how much of the calculated loss could be "attributed directly to Mr. Teehee's activities." *Id.* The Presentence Report also documented the employment and marital history of the appel-

lant, as well as information relative to his health and financial condition. *Id.* at 8–16.

On November 3, 1988, appellant's attorney sent a letter to the court detailing appellant's exception to particular matters within the report. The only significant objection was to the suggested loss to U.S. Sprint of $837,356.43:

> The pre-sentence report contradicts itself in stating that there is causation between the conduct of Mr. Teehee and the stated loss. In actuality, the amount of loss is the total loss suffered by U.S. Sprint from all unauthorized use of access codes which were given to Mr. Teehee by Robert Berube.... The distribution of the access codes is like a pyramid and spreads out through each of the levels on which the codes are made available to persons like Berube and Lindahl and then on to the next level to individuals like Mr. Teehee.

R., Vol. I, Letter of 11–03–88 at 2.

The sentencing hearing was held on December 8, 1988. Again, the only significant item of controversy was the amount of loss to U.S. Sprint which could be attributed to the activities of Mr. Teehee. At the hearing, the government adjusted its figure of loss to $610,349.10 in order to remove the element of profit which had been included in the earlier figure. R., Vol. II at 7. Ultimately, the trial court sentenced the appellant to confinement for six months, followed by a probation period of five years, and ordered restitution as follows:

> In regard to restitution, the Court makes the following findings which I have before me *by a preponderance of the evidence* and as demonstrated that the proceedings wherein the defendant entered his plea of guilty and by this the investigation report and based upon the statements made by counsel for both parties that the United States Sprint Communications Company ... as the victim pursuant to 18 United States Code 3663 and 3664 of the crime for which the defendant has been convicted. They are a legitimate victim. Upon the statement there is some disparity between what the probation report says and what you now

tell me from the United States Attorney's Office but the Court would find that the United States Sprint Communications Company sustained loss as a result of the defendant's crime somewhere between the amounts of 610,349.10 and 837,000 which the probation officer and which I think was reported by the agent that handled this, Agent Quinn. After consideration of the total amount of reported loss and the difficulty of establishing a hard dollar amount, the financial resources of the defendant and the financial needs and earnings ability of the defendant and the defendant's dependents, the Court sets the restitution amount at 100,000 that the defendant be required to make as hereinafter ordered. Pursuant to the provisions of 18 United States Code, 3663 and the findings made by the Court the defendant is ordered to pay as restitution herein directed by the United States Probation Office through the United States Attorney's Office or as otherwise provided by law that amount, 100,000, to be paid to the United States Sprint Communication Company.

R., Vol. II at 12–13 (emphasis added).

Appellant challenges the order of restitution on two basic grounds. First, appellant claims that the restitution order was not made in accordance with the provisions of the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. §§ 3663 and 3664. Second, appellant charges the sentencing court with the failure to make sufficient findings under Fed.R.Crim.P. 32(c)(3)(D).

## II. Analysis

### A. Determining Restitution Under the VWPA..

Determining a proper amount of restitution under the VWPA is part of the sentencing process, *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir.1984), and is mandated by § 5E4.1 of the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual* at 5.17 (1988). We review the legality of a sentence *de novo*, *United States v. Duncan*, 870 F.2d 1532, 1535 (10th Cir.), *cert. de-*

**274**

*nied,* — U.S. ——, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989), and we are obligated to review the process by which a sentence is imposed. *United States v. Hill,* 798 F.2d 402, 407 (10th Cir.1986). However, in performing our review we are obligated to "give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are *clearly erroneous* and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (emphasis added).

A sentencing court draws its authority to issue a restitution order from § 3663(a): "The court, when sentencing a defendant convicted of an offense under [Title 18] ... may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to *any victim of such offense.*" (Emphasis added.)

As provided in 18 U.S.C. § 3664(a), the procedure for determining the amount of restitution in a particular case involves the consideration of several variables:

The court, in determining whether to order restitution under section [3663] of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

Section 3664(d) provides the evidentiary guidelines for resolving disputes over the proper restitution amount:

Any dispute as to the proper amount ... of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and such defen-

dant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

Seizing upon the first of the factors in § 3663(a), appellant asserts that the order of restitution here is illegal because the total loss to the victim was not the *result* of only the defendant's offense: "[T]hese amounts were not caused by his criminal activities alone, but represented losses caused by the independent actions of other persons who had acquired US Sprint access codes from other sources." Appellant's Brief at 10.

Just as its name implies, the focus of the restitution provisions of the Victim and Witness Protection Act is on the victim. Congress enacted the restorative provisions of the VWPA for the purpose of compensating victims of crimes: " '[t]he legislative history of the VWPA indicated that Congress intended to enact a victim compensation scheme "to restore the victim to his or her prior state of well being" to the highest degree possible.' " *Duncan,* 870 F.2d at 1535 (quoting *Hill,* 798 F.2d at 405 (quoting S.Rep. No. 532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Admin. News, 2515, 2536)).[1] The determination of an appropriate restitution amount is by nature an inexact science. The sentencing judge is required to weigh the amount of the victim's loss with other factors such as the resources of the defendant and the hardships such an order might impose on the defendant's dependents. Yet, even in those cases where the precise amount owed is difficult to determine, a court's authority to deny restitution is limited. Section 3664(d) authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim. S.Rep. No. 532, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S. Code Cong. & Admin.News 2515, 2537.

---

1. The focus is on the victim's loss, not the defendant's gain. *Cf. Richard,* 738 F.2d at 1123. Thus, the appellant's alleged profit from the sale of the codes (approximately $9,000) is irrelevant for this determination.

As we noted above, the evidentiary findings of a sentencing court cannot be reversed unless the findings are clearly erroneous. Based on our review of the record, we hold that the sentencing court's findings are not clearly erroneous. To be sure, appellant was but one participant in the trafficking activity and his telephone calls alone could not have resulted in the total loss to U.S. Sprint. However, appellant's criminal activity was not confined to his own illegal phone use; through his sales activity, appellant caused significant downstream activity. Admittedly, it is a difficult task to assign a precise amount to the appellant for the losses caused by appellant and his downstream customers. However, we find no support for the proposition that this difficulty renders impossible the determination of proper restitution. The sentencing judge is still obligated to determine an appropriate amount relative to the defendant's offense, whether he acted alone or in concert with others.

Section 3664(d) requires the government bear the burden of demonstrating the amount of loss sustained by the victim as a result of the offense. That amount must be established by a preponderance of the evidence. *Duncan,* 870 F.2d at 1537, 1539; *Hill,* 798 F.2d at 407. Accordingly, the government and U.S. Sprint presented evidence to the court of the amount of loss sustained by U.S. Sprint through the unauthorized use of the thirty-nine access codes. The defendant disputed the government's showing as lacking causation between the defendant's activities and the amount of loss claimed. R., Vol. II at 4. The defendant further contended that it was doubtful the government could offer any evidence that would carry its burden. *Id.* at 5. The court responded directly, "I understand but ... I'm inclined to follow Agent Quinn's report and the others." *Id.* at 5–6. The presentence report indicated that appellant's participation in the pyramid activity was substantial, though relatively brief in time. The information produced by the government's investigation indicated that

Mr. Teehee bought and sold hundreds of access codes during the months of his dealership. R., Vol. I, Presentence Report at 1–4.

Here, the sentencing judge confined his consideration of the victim's losses to the losses associated with the thirty-nine codes.[2] Those codes were found in the appellant's possession and were the basis for his guilty plea. There was no additional evidence before the court to indicate that the appellant's supplier, Robert Berube, sold the thirty-nine codes to persons other than the appellant. Based on this evidence, the court found that U.S. Sprint's loss as a result of the defendant's crime to be between the amounts of $610,349 and 837,-000. R., Vol. II at 12.

Presumably, appellant would require the government to produce an itemized list of the phone calls made by the appellant himself and by his downstream customers. Yet, even if U.S. Sprint were able to produce an itemized list of unauthorized calls by the source of each call, the task of tying the calls back to Mr. Teehee would still be nigh impossible. Given resource limitations, the court would still not know the identities of all of Mr. Teehee's customers and their downstream customers. However, as we have discussed, we do not read the VWPA to require so exact a showing.

In our opinion, the evidence before the court supports a finding, based on a preponderance of the evidence, that the downstream activity caused by appellant's activities was substantial and supports the sentencing court's finding that the loss sustained by U.S. Sprint on the thirty-nine codes as a result of the offense exceeded $610,349. Accordingly, we cannot say that the court's finding is clearly erroneous.

Consistent with the provisions of § 3664(d) and *Hill,* 798 F.2d at 406–07, the sentencing court went on to note that it had considered the financial resources of the defendant and the financial needs and earnings ability of the defendant and the

---

**2.** We have previously held that for purposes of awarding restitution under the VWPA, the sentencing court is not limited by the amount specified in the indictment or by the specific transactions alleged in the indictment. *Duncan,* 870 F.2d at 1535; *Hill,* 798 F.2d at 406.

defendant's dependents.[3] R., Vol. II at 12. That information was contained in the presentence report, which included evidence of the appellant's education and employment history and earnings capacity. R., Vol. I, Presentence Report at 8–15.

Therefore, upon review of the record and the presentence report contained therein, we cannot say that the court's assignment of restitution in the amount of $100,000— less than seventeen percent of the total loss to U.S. Sprint—was clearly erroneous. The sentencing judge properly allocated the burdens of proof pursuant to § 3664(d) and made the appropriate findings as required by the VWPA and *Hill.* Faced with an inexact and difficult determination, the sentencing judge acted in accordance with the compensatory purposes of the VWPA and reached an expeditious, reasonable determination of appropriate restitution.

### B. *Federal Rule of Criminal Procedure 32(c)(3)(D).*

■ Finally, the appellant argues that he was denied due process because the sentencing court failed to properly make findings under Fed.R.Crim.P. 32(c)(3)(D), which states:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

We have already chronicled appellant's objections to the presentence report as they appeared in the appellant's letter to the district court of November 3, 1988. (See section I above.) The defendant's letter put in issue the total amount of loss sustained as a result of the defendant's activities. In response, the sentencing court found that the loss sustained as a result of defendant's crime was somewhere between the amounts of $610,000 and $837,000. This finding was expressly based on a preponderance of the evidence. As such, the sentencing court made proper findings as to the matter controverted by the defendant in accordance with Fed.R.Crim.P. 32(c)(3)(D).

### III. Conclusion

We hold that the sentencing court's restitution order was made in accordance with the provisions of the VWPA, 18 U.S.C. §§ 3663 & 3664. At the sentencing hearing, the court properly distributed the burdens of proof among the parties and made findings of fact as required by § 3664, prior case law, and Fed.R.Crim.P. 32(c)(3)(D). Further, we find that the court's determinations of the amount of the victim's loss as a result of the offense and of the final restitution amount were not clearly erroneous. Accordingly, the order of the district court is AFFIRMED.

---

**3.** The *Hill* court eventually remanded the order of restitution to the district court for factual determinations consistent with the VWPA. The sentencing court made no factual findings other than to find the loss to the victim in a specific amount. The sentencing court did not indicate whether its findings were based on a preponderance of the evidence and did not indicate whether the court had considered the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents pursuant to 18 U.S.C. § 3580 (now § 3664). 798 F.2d at 406–07.