UNITED STATES of America, Plaintiff–Appellee,

v.

Jessie Mae STONE, Defendant–Appellant.

No. 89–7541.

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1991.

---

Joe Espy, Montgomery, Ala., for defendant-appellant.

James E. Wilson, U.S. Atty., Charysse L. Alexander, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

COX, Circuit Judge:

Jessie Mae Stone was convicted of mail fraud following her plea of guilty. As part of her sentence, the district court ordered her to make restitution payments totaling $12,390.85. Stone appeals, challenging this part of her sentence. In light of the Supreme Court's decision in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), we vacate that part of her sentence and remand.

## I. FACTS AND PROCEDURAL HISTORY

Stone and nine other individuals were charged in a 103 count indictment. Count 1 charged Stone with conspiring to commit mail fraud in violation of 18 U.S.C. § 371. Count 1 described a broad scheme to defraud various businesses that extend credit to their customers. The alleged scheme involved the submission of fraudulent credit card applications through the mails during a period from April 1985 to January 1987.

Counts 79 through 90 charged Stone with substantive mail fraud offenses in violation of 18 U.S.C. § 1341; each of these counts identified a single credit card application and alleged wherein the information provided in the application was false. The businesses to which these applications were submitted were Amoco Oil Company, Citgo Corporation, Parisian Department Store, J.C. Penney Company, Crown Petroleum Corporation and Gayfers.

Counts 91 through 103 charged Stone with using false Social Security numbers in credit card applications with the intent to deceive a business in violation of 42 U.S.C. § 408(g)(2). The applications in question were, with one possible exception, the same as those referred to in Counts 79 through 90.

Stone entered into a plea agreement with the government by the terms of which she would plead guilty to Count 81 and all other counts would be dismissed. Count 81 charged Stone with having committed mail fraud on or about August 13, 1985, by the submission to Amoco Oil Company of a fraudulent credit card application in the name of Jessie Flowers that included false information concerning the employment of the applicant and false credit references.

The trial court determined that there was a factual basis for Stone's plea to Count 81, and on May 22, 1989, accepted her plea of guilty; at sentencing the court dismissed all other counts charging her.

The plea agreement was silent as to the defendant's obligation to make restitution. At the time of the defendant's plea she was advised by the court that she could be required "to make restitution to the victim of the offense." Supp. R. 1–11.

On July 12, 1989, Stone was sentenced to twenty-four months imprisonment (all but six months of which was suspended) to be followed by probation for a term of five years. As a condition of her probation, she was ordered to make restitution as follows:

| | |
|---|---|
| Amoco Oil Company | $4,996.89 |
| Citgo Corporation | $4,261.00 |
| Parisian Department Store | $ 331.50 |
| J.C. Penney Company | $ 484.00 |
| Crown Petroleum Corporation | $2,317.46 |

The restitution ordered totals $12,390.85.

Stone appealed, raising a single issue. She argued that the district court was without authority to order restitution for an amount in excess of the loss attributable to Count 81, the count of conviction. This court affirmed without opinion pursuant to 11th Cir. Rule 36–1. 896 F.2d 558. Stone filed a petition for a writ of certiorari seeking review of our decision. The Supreme Court granted the petition, *Stone v. United States,* —— U.S. ——, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), vacated our judgment and remanded the case to our court for further consideration in light of the Supreme Court's intervening decision in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). We now reconsider the issue on this appeal in light of *Hughey.*

## II. DISCUSSION

■ We review the legality of a criminal sentence, including an order of restitution,

*de novo. United States v. Barany,* 884 F.2d 1255, 1259 (9th Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990).

■ At the time of the offense to which Stone pleaded guilty, August, 1985, restitution orders were authorized by the Federal Probation Act, 18 U.S.C. § 3651 (FPA)[1] and the Victim and Witness Protection Act, 18 U.S.C. §§ 3663 and 3664[2] (VWPA). In this case, however, the government argues that the VWPA supports the district court's restitution order.

The VWPA provided, at the time of Stone's offense, that the court, when imposing a sentence on a defendant convicted under Title 18 or certain sections of the Federal Aviation Act of 1958, could order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.[3]

In *Hughey,* the issue as stated by the Supreme Court was whether the VWPA "allow[s] a court to order a defendant who is charged with multiple offenses but who is convicted of only one offense to make restitution for losses related to the other alleged offenses." 495 U.S. at ——, 110 S.Ct. at 1981. Hughey was indicted on three counts of theft by a United States Postal Service employee and three counts of use of unauthorized credit cards. He pleaded guilty to one count of use of an unauthorized credit card in return for the government's agreement to dismiss the remaining counts and forgo prosecution for any other offense arising from the scheme

---

1. The FPA was repealed October 12, 1984 effective November 1, 1986. *See* Pub.L. No. 98–473, 98 Stat. 1987 (repealing 18 U.S.C. § 3651); Pub.L. No. 98–473, 98 Stat. 2031 (providing for application of 18 U.S.C. § 3651 to offenses committed before November 1, 1986).

> The FPA provides in pertinent part:
> The court may revoke or modify any condition of probation, or may change the period of probation.
> ....
> While on probation and among the conditions thereof, the defendant—
> ....
> May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; ....

2. This Act was formerly codified at sections 3579 and 3580 but was renumbered 3663 and 3664, effective November 1, 1986. *See* Pub.L. 98–473, Title II, c. II, § 235(a)(1), Oct. 12, 1984, 98 Stat. 2031.

18 U.S.C. § 3651 (1985).

3. Section 3663(a) was amended, effective Nov. 29, 1990, and the following was added:

> For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Neither Stone nor the government contends that this amendment applies to this case.

described in the indictment. The count to which Hughey pleaded guilty charged that, on a specific date, Hughey made the unauthorized use of a MBank Mastercard issued to one Godfrey. At sentencing, the government sought a restitution order totaling $90,431, the total of MBank's losses arising out of Hughey's alleged theft and use of 21 cards from various MBank cardholders. Hughey argued that restitution should be limited to $10,412, the loss sustained by MBank from unauthorized uses of the Godfrey credit card identified in the count of conviction. The district court ordered restitution to MBank totaling $90,-431, as requested by the government. The Fifth Circuit affirmed, holding that restitution under the VWPA is not limited to the loss attributable to the offense of conviction when "there is a significant connection between the crime of conviction and similar actions justifying restitution." *United States v. Hughey*, 877 F.2d 1256, 1264 (5th Cir.1989), *rev'd, Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The Supreme Court granted certiorari. The Court looked to the language of the VWPA to determine Congress's intent with respect to the measure of restitution. The Court found that in determining who is entitled to restitution and the amount of restitution, the VWPA repeatedly ties restitution to "the offense" of conviction. This focus, the Court held, strongly suggests that Congress intended restitution to be limited to the conduct underlying the offense of conviction. *Hughey*, 495 U.S. at —, 110 S.Ct. at 1982. Further, the Supreme Court held that if Congress had intended that restitution be allowed for losses attributable to all of the defendant's conduct it would have chosen different language than "the offense." *Id.* at —, 110 S.Ct. at 1984.

Stone argues that under *Hughey*, restitution in this case is authorized only for the loss to Amoco resulting from the fraudulent application referred to in Count 81. The government concedes that *Hughey* mandates that restitution be limited to the offense of conviction, but argues that the district court's order of restitution in this case is not inconsistent with *Hughey*. The government contends that Stone, by pleading guilty to Count 81, admitted devising and executing a scheme to defraud, that all mailings arose out of the same scheme to defraud, and therefore the "offense" of conviction included the fraudulent mailings charged in the other counts.

The government cites *United States v. Pomazi*, 851 F.2d 244 (9th Cir.1988) and *Phillips v. United States*, 679 F.2d 192 (9th Cir.1982) for the proposition that in cases involving mail fraud the word "offense" includes the fraudulent scheme alleged as an element of the offense and that restitution need not be limited to the amount caused by a particular mailing described in the count of conviction but may include all losses from the entire scheme. *Pomazi*, 851 F.2d at 249; *Phillips*, 679 F.2d at 194–95. *Pomazi* and *Phillips*, however, are no longer persuasive precedent. Following the Supreme Court's decision in *Hughey*, the Ninth Circuit reconsidered the issue addressed in *Pomazi* and *Phillips* and held that *Pomazi's* holding relative to restitution under the VWPA was implicitly overruled by *Hughey*. *See United States v. Sharp*, 941 F.2d 811, 815 (9th Cir.1991).[4]

The government also cites *United States v. Hill*, 798 F.2d 402 (10th Cir.1986), in support of its position. In *Hill*, the Tenth Circuit held that "the offense" language used in the VWPA suggested that when awarding restitution, the district court is not limited to the loss specified in the in-

**4.** The government also relies on *United States v. Davies*, 683 F.2d 1052, 1055 (7th Cir.1982), which holds that when a mail fraud scheme is involved, the FPA authorizes restitution for losses resulting from the entire scheme. The FPA has not been so construed in this circuit. *See United States v. Barnette*, 800 F.2d 1558, 1571 (11th Cir.1986) (per curiam), *cert. denied, Barnette v. United States*, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987) (holding that the amount of restitution under the VWPA or the FPA may not exceed the actual losses flowing from the offense for which the defendant has been convicted.); *United States v. Johnson*, 700 F.2d 699, 701 (11th Cir.1983) (per curiam) (involving defendants convicted of certain counts of mail fraud and holding that in a multicount indictment, restitution under the FPA is restricted to the counts that result in conviction.)

dictment, the particular counts of the offense or the specific transactions alleged in the indictment. *Id.* at 406. However, in *Hughey* the Supreme Court interpreted this same language to limit the amount of restitution that could be ordered, not expand it. Therefore, the government's reliance on *Hill* is unpersuasive.

The government further relies on *United States v. Bennett,* 943 F.2d 738 (7th Cir. 1991), which involves a defendant who pled guilty to two counts of mail fraud arising from a scheme to defraud purchasers by rolling back the odometers of cars that he sold. This was done so that the cars would qualify for Chrysler's extended warranty. *Id.* at 739. As part of his sentence, Bennett was ordered to pay restitution for his conduct related to over eighty vehicles. *Id.* The Third Circuit affirmed this sentence holding that *Hughey* supported the sentence because "proof of a scheme is an element of the offense of mail fraud, and therefore, actions pursuant to that scheme should be considered 'conduct that is the basis of the offense of conviction.'" *Id.* at 740. However, *Bennett* is distinguishable from this case because Bennett agreed to the order of restitution as part of his plea agreement. In this case, Stone made no such agreement.[5]

Finally, we reject the government's argument because accepting it would render Stone's plea agreement meaningless. As the Supreme Court stated in *Hughey,* "[t]he essence of a plea agreement is that both the prosecution and the defense make concessions to avoid potential losses." 495 U.S. at ——, 110 S.Ct. at 1985. Here, Stone pleaded guilty to Count 81 in return for the government's promise to dismiss the remaining counts. Although this limited the acts that Stone could be made to pay restitution for, it assured the government that restitution would be paid to Amoco for the loss suffered as a result of Count 81.

*See Hughey,* 495 U.S. at ——, 110 S.Ct. at 1985.

Consistent with the Supreme Court's decision in *Hughey,* we hold that a restitution order under the VWPA may not exceed the loss attributable to the specific conduct that is the basis of the offense of conviction.

## III. CONCLUSION

Because Stone pleaded guilty and was convicted only of the conduct charged in Count 81 involving Amoco Oil Company, *Hughey* mandates a holding that the district court exceeded its authority in ordering restitution in an amount in excess of the loss attributable to Count 81. Accordingly, we VACATE that part of the sentence that ordered restitution and REMAND to the district court for resentencing consistent with this opinion.

---

**5.** This same reasoning is applicable to the government's reliance on *United States v. Marsh,* 932 F.2d 710 (8th Cir.1991). *Marsh* involved a defendant indicted on fifteen counts of mail fraud. He pleaded guilty to three counts. As part of his plea agreement, he agreed to pay restitution to all victims named in the indictment. Therefore, the Eighth Circuit held, the district court's imposition of restitution in an amount equal to the loss suffered by all victims named in the indictment did not violate the Supreme Court's holding in *Hughey.*