**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Walter E. BREWER and Brian E. Honel, Defendants–Appellants.**

**Nos. 92–5038, 92–5043.**

United States Court of Appeals, Tenth Circuit.

Jan. 5, 1993.

Frank M. Hagedorn and James J. Proszek, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, for defendants-appellants.

Tony M. Graham, U.S. Atty., Susan W. Pennington, and Kathleen Bliss Adams, Asst. U.S. Attys., Tulsa, OK, for plaintiff-appellee.

Before MCKAY, Chief Judge,
BALDOCK and LAY *, Circuit Judges.

BALDOCK, Circuit Judge.

In these consolidated cases, Defendants Walter E. Brewer and Brian E. Honel appeal the district court's order of restitution following Defendants' guilty plea to conspiracy to commit mail fraud. Defendants contend that the district court erred in ordering them to pay restitution for losses not caused by their specific conduct. Defendants further contend that the district court used unreliable information to calculate the total loss, making its finding of loss clearly erroneous. We have jurisdiction under 18 U.S.C. § 3742(a), and we affirm.

Defendants managed discount grocery stores in Tulsa, Oklahoma, which were owned by Fred Latham. Like most grocery stores, Latham's stores received a significant number of coupons each day. Generally, when a customer presents a product's coupon, the grocer discounts the product depicted on that coupon in the amount of the coupon's face value. To redeem these coupons, the grocer mails them to a clearing house, and the clearing house mails the grocer a check in the amount of

* The Honorable Donald P. Lay, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

the face value of all coupons received. Individual manufacturers then reimburse the clearing house for the amount the clearing house has paid grocers for the manufacturer's coupons. For coupons to be legally redeemed, the grocer must have received them from customers in exchange for a product discount. Latham, however, illegally redeemed coupons in that he collected money from clearing houses for coupons not received from customers.

Defendants, under Latham's direction, collected coupons from newspapers and store displays and defaced the coupons, by walking on them, wrinkling them up, and sometimes watering them down, to make them appear used. Latham would then mix these coupons with coupons legitimately received from customers and send them by mail to a clearing house for redemption, falsely representing that all the coupons were legitimately received from customers. Defendants altered store records to make it appear as if the illegally redeemed coupons had been legitimately received from customers in the ordinary course of business.

Defendants were indicted, along with Latham and several others, on one count of conspiracy to commit mail fraud (count 1), twelve counts of aiding and abetting the commission of mail fraud (counts 2–13), and one count of removal or destruction of property to prevent seizure (count 14). In return for the government's agreement to dismiss Counts 2 through 14, Defendants pleaded guilty to the conspiracy count (count 1).

Because legally redeemed coupons were submitted to clearing houses with illegally redeemed coupons, the district court was unable to determine the exact amount of loss caused by the fraud. Therefore, the court was required to estimate the loss in order to determine Defendants' restitution obligations. In estimating the loss, the district court relied on a report prepared by the probation department. The report was partially based on a private research study, which interviewed 981 stores in Detroit,

Michigan to determine their coupon redemption rates. The probation department then compared this private study coupon redemption rate with the coupon redemption rate in selected Tulsa grocery stores, including stores previously owned by Latham, and determined that the private study rate accurately reflected the coupon redemption rate of Tulsa grocery stores. The district court used this coupon redemption rate to approximate the value of those coupons legitimately received from Latham's customers and subtracted this amount from Latham's total coupon redemptions to determine the amount of loss to manufacturers. The district court then reduced the loss amount, adjusting for margin of error and taking into account the discount nature of Latham's stores. The district court determined that the total loss for which all the coconspirators would be obligated to pay restitution was $1,191,-382.00. The district court ordered each Defendant to pay $175,000 restitution, in addition to ordering sentences of five years probation.

■ Defendants first contend that the district court erred in ordering them to pay restitution for losses not caused by their specific conduct. Defendants' failure to raise this issue at sentencing limits our review to a search for plain error. *United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir.1991). Under the plain error standard, we will not review a district court's factual findings relating to sentencing, *United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir.1991), but will review for "particularly egregious" or "obvious and substantial" legal error, which our failure to consider would result in a "miscarriage of justice." *Id.* at 1511, 1516–17. *See also United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

■ A restitution award under the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663–3664,[1] is autho-

---

1. In the present case, the district court did not specify whether it was ordering restitution pursuant to the VWPA or the Federal Probation Act (FPA), 18 U.S.C. § 3651 (repealed). Although the FPA was repealed on November 1, 1987, it is possible that the district court applied the FPA to determine Defendants' restitution obligations because Defendants' illegal conduct began in

rized only for losses caused by conduct underlying the offense of conviction. *Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990); *United States v. Cook,* 952 F.2d 1262, 1265 (10th Cir.1991). In *Hughey,* the defendant was indicted for three counts of theft by a United States Postal Service employee and three counts of unauthorized credit card use. The defendant pleaded guilty to one count of unauthorized credit card use in exchange for the government dismissing the remaining charges. *Id.* 495 U.S. at 413, 110 S.Ct. at 1980. The Supreme Court held that the defendant could be ordered to pay restitution only for the amount of loss resulting from the credit card count to which he pleaded guilty. *Id.* at 422, 110 S.Ct. at 1986. *See also Cook,* 952 F.2d at 1263–65 (defendant, who pleaded guilty to three counts of a forty-three count indictment charging embezzlement of social security benefits, could not be charged restitution in any amount greater than the three social security checks underlying her three counts of conviction).

■ Defendants contend that *Hughey* limits their restitution obligation to losses caused by the specific conduct they contributed to the conspiracy. According to Defendants, the loss to manufacturers was caused solely by those conspirators who actually mailed the coupons to the clearing house, and not by Defendants whose only acts contributing to the conspiracy were coupon accumulation and store record alteration. Therefore, Defendants contend that they cannot be held accountable for any restitution.[2]

■ Defendants' construction of *Hughey* is not persuasive. *Hughey* stands solely for the proposition that restitution is limited to losses caused by the conduct underlying the offense of conviction. Here, the offense of conviction was a conspiracy and the underlying conduct was Defendants' agreement to participate in the plan to defraud manufacturers with illegally redeemed coupons. When a defendant is convicted of conspiracy, a district court's restitution award may encompass all losses resulting from the conspiracy.[3] *See United States v. Sanga,* 967 F.2d 1332, 1335 (9th Cir.1992) (holding that defendant can be ordered to pay restitution for losses which were the direct consequence of defendant's conspiracy because the losses flow from the conspiracy itself); *United States v. Clark,* 957 F.2d 248, 253 (6th Cir.1992) (implying that if defendant had been convicted of conspiracy to commit all counts charged in the indictment, the district court could have ordered him to pay restitution for all counts charged in the indictment).

1985, prior to the FPA's repeal. However, when a district court fails to specify whether the FPA or VWPA governs, "unless a clear intention appears to the contrary, we will assume restitution orders are made pursuant to the broader provisions of the VWPA." *United States v. Cook,* 952 F.2d 1262, 1264 (10th Cir.1991).

**2.** The government relies on *United States v. Chaney,* 964 F.2d 437, 453 (5th Cir.1992), to rebut this argument. However, *Chaney* is distinguishable from Defendants' case. In *Chaney,* the Fifth Circuit held that defendant was required to pay restitution because defendant's actions underlying her conspiracy conviction were inextricably related to those losses suffered as a result of the conspiracy conviction of which she was acquitted. The defendant in *Chaney* was convicted of conspiracy to make false entries in bank books and argued on appeal that because her false entries did not cause the loss underlying her conspiracy conviction, restitution was not appropriate. *Id.* at 443, 451. She asserted that the loss was caused by making improper

loans, acts which she did not perform and which did not form the basis of her conviction. *Id.* at 451 n. 41. *Chaney* is not instructive here because the defendant in *Chaney* was claiming that her underlying offense of conviction (making false entries) did not cause the loss, whereas Defendants in this case do not dispute that the offense underlying their conspiracy conviction (mail fraud) caused the loss. Defendants claim that the conduct that they contributed to the mail fraud conspiracy, coupon accumulation and record alteration, did not cause the loss.

**3.** We do not suggest that our holding today reinstates the holding in *United States v. Vance,* 868 F.2d 1167 (10th Cir.1989), which we have stated "no longer controls restitution orders under the FPA." *Cook,* 952 F.2d at 1264 n. 3. *Vance* held that a district court's restitution award may encompass all losses related to a conspiracy when the original indictment *charged* a conspiracy, even though the defendant was not convicted of that conspiracy. *Vance,* 868 F.2d at 1170.

■ A conspiracy participant is legally liable for all reasonably foreseeable acts of his or her coconspirators in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *United States v. Kissel*, 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168 (1910); *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992). Because a conspiracy participant is obligated for the acts of his or her coconspirators until the conspiracy accomplishes its goals or that conspirator withdraws, *see Hyde v. United States*, 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912), the losses caused by the entire conspiracy, not just the losses caused by those acts committed by the defendant, can be attributed to the defendant when the district court orders restitution. *Cf. United States v. Wallen*, 953 F.2d 3, 6 (1st Cir.1991) (holding that RICO conviction is conviction for single offense and district court can award restitution for all losses arising from the offense and its component parts). Accordingly, the fact that Defendants did not personally mail the coupons to the redemption center does not preclude the district court from requiring them to pay restitution for losses caused by the mail fraud conspiracy in which they participated.[4] Contrary to Defendants' assertions, by participating in the conspiracy, Defendants' actions caused the loss.

■ Defendants next contend that the district court failed to base its loss calculation on reliable statistical data, making the calculation clearly erroneous, arbitrary, and unsupported by the record. In reviewing the district court's restitution award, we are "obligated to 'give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.'" *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir.1990) (quoting 18 U.S.C. § 3742(e)). The government bears the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim as a result of the offense. 18 U.S.C. § 3664(d); *Teehee*, 893 F.2d at 275.

"The determination of an appropriate restitution amount is by nature an inexact science." *Id.* "[W]here the precise amount [of restitution] owed is difficult to determine, [18 U.S.C. § 3664] authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." S.Rep. No. 532, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2537. Defendants' contention that the private study concerning the coupon redemption rate was unreliable overlooks the fact that the private study was used only as a starting point for determining loss. The reliability of the private study was verified by comparing its result to the coupon redemption rate of grocery stores in Tulsa. Defendants' contention that the loss estimation impermissibly re-

---

4. Defendants' reliance on *United States v. McHenry*, 952 F.2d 328 (9th Cir.1991), is misplaced. *McHenry* held that conspiracy convictions are not appropriate for restitution when the overt act or acts done in furtherance of the conspiracy do not "deprive anyone of anything of value." *Id.* at 330. *McHenry* is inapposite to the present case because a loss did result from the conspiracy's overt acts in that money was fraudulently obtained from product manufacturers by illegal coupon redemption.

Defendants also cite a number of mail and wire fraud cases in which other circuits have held that when a defendant is indicted for multiple related schemes to defraud but not convicted of all, the district court cannot order restitution for losses caused by the related schemes but can only order restitution for losses caused by the count of conviction. *See United States v. Niven*, 952 F.2d 289, 294 (9th Cir.1991); *United States v. Milbourn*, 948 F.2d 1088, 1089 (8th Cir.1991); *United States v. Stone*, 948 F.2d 700, 703–04 (11th Cir.1991); *United States v. Sharp*, 941 F.2d 811, 814–15 (9th Cir.1991); *United States v. Marsh*, 932 F.2d 710, 712–13 (8th Cir. 1991). These cases stand solely for the proposition that a defendant cannot be ordered to pay restitution for losses caused by conduct underlying counts for which the defendant was not convicted. These cases do not support Defendants' argument here because the loss in the present case resulted from the conspiracy in which Defendants participated and were convicted.

**186**

lied on hearsay is equally baseless, because it is well-established that hearsay evidence is admissible at sentencing. *See United States v. Beaulieu,* 893 F.2d 1177, 1180 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Furthermore, Defendants' assertion, that the probation department's calculations applying the private study to Latham's stores were flawed, is also meritless. Contrary to Defendants' assertions, the district court and the probation department considered the effect of Latham's double-couponing in their loss calculations, and, although Defendants assert that the adjustments made to the loss amount showed its speculative nature, Defendants fail to observe that the majority of the adjustments were in their favor. The district court's findings of fact relating to the loss were not clearly erroneous.

AFFIRMED.