Oscar PORCELLI, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 885, Docket 91–2485.

United States Court of Appeals, Second Circuit.

Submitted Jan. 14, 1992.

Decided May 27, 1992.

---

Vivian Shevitz, Jane Simkin Smith, Georgia J. Hinde, New York City, for petitioner-appellant.

Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, and Faith Gay, Asst. U.S. Attys., Brooklyn, N.Y., for respondent-appellee.

Before OAKES, Chief Judge, NEWMAN, Circuit Judge, KEENAN, District Judge.*

OAKES, Chief Judge:

This appeal is from the denial of a petition for habeas corpus under 28 U.S.C. § 2255 (1988) by the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge.* Oscar Porcelli's convictions on sixty-one counts of mail fraud, 18 U.S.C. § 1341 (1988), and one count of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) (1988), were upheld by a divided panel of this court, *United States v. Porcelli,* 865 F.2d 1352 (2d Cir.), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The principal basis for the section 2255 motion and this appeal is a decision of the New York Court of Appeals, *State v. Barclays Bank of New York, N.A.,* 76 N.Y.2d 533, 563, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990), post-dating Porcelli's petition for certiorari. Porcelli claims that *Barclays* undercuts the original rationale for affirming his convictions, and that mail fraud, as defined by the Supreme Court in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), was not committed as the *Porcelli* panel majority thought it had been. This is said to constitute an intervening change in the law so as to require the granting of Porcelli's section 2255 application. *See Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305–06, 41 L.Ed.2d 109 (1974); *Wright v. United States,* 732 F.2d 1048, 1056–57 (2d Cir. 1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). In the interests of judicial economy, this appeal was referred to the same panel that heard the original appeal. We unanimously affirm.

Porcelli's convictions for mail fraud and, hence, RICO, were affirmed on the basis that the filing of false sales tax returns for twelve of Porcelli's gas stations constituted federal mail fraud. 865 F.2d at 1361. It was argued, persuasively to Judge Newman in dissent, that *McNally's* construction of the federal mail fraud statute made it inapplicable to Porcelli's conduct in that there was no "deprivation" of the State's property because there was no showing that Porcelli had collected sales taxes and failed to remit them to the tax collector. *Porcelli,* 865 F.2d at 1368–69 (Newman, *J.,* dissenting). The panel majority, however, took the view that the filing of false sales tax returns deprived the state of property in the form of choses in action. These choses in action derived from the "direct and independent" obligation under New York law placed on a vendor such as Porcelli to collect and pay the taxes to the state, whether or not the taxes were actually collected. *Id.* at 1360–61.

*Barclays* involved a suit by the state as payee of certain checks to recover against the depositary bank proceeds paid over endorsements forged by the taxpayers' dishonest accountant. Porcelli argues that *Barclays* stands for the proposition that "the State had *no* property interest where it did not first have possession of the tax dollars." We believe *Barclays* does not involve the question whether choses in action in state sales tax law constitute "property", and is therefore distinguishable. As stated, the case involved a dishonest accountant who computed state tax obligations for his clients, received from them checks payable to the state, forged endorsements on the checks, and deposited them in his own Barclays Bank account. After accepting the deposits, the bank collected money from the clients' banks, and permitted the accountant to withdraw the

---

* Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

proceeds. The New York Court of Appeals affirmed the dismissal of the state's claim against Barclays for the face amounts of the checks either under the Uniform Commercial Code (UCC) or in restitution or quasi-contract. In terms of the UCC, the Court held that "a payee must have actual or constructive possession of a negotiable instrument in order to attain the status of a holder (*see* UCC 1–201[20] ) and to have an interest in it." 76 N.Y.2d at 536, 561 N.Y.S.2d at 698, 563 N.E.2d at 12. In terms of relief by way of restitution or quasi-contract, the Court held: "The checks were never actually or constructively delivered to [the state]. It, therefore, never acquired a property interest in them and cannot be said to have suffered a loss." 76 N.Y.2d at 540–41, 561 N.Y.S.2d at 701, 563 N.E.2d at 15.

But as Judge Sifton said in denying the section 2255 petition, the *Barclays* court was focused on the physical checks, not the taxes they represented. Our court was focused on the right of the state to be paid sales taxes by a vendor, not on checks intended as payment. Porcelli owed the state, by statute, an obligation to collect and remit taxes to the state, whether or not he actually collected the taxes from purchasers. *Porcelli*, 865 F.2d at 1361 & n. 2. Barclays Bank, on the other hand, was not a vendor statutorily required either to collect or remit sales tax. In short, unlike Porcelli, Barclays Bank had no similar statutory obligation to the state to pay the taxes improperly withheld by the accountant. Whether Barclays could be required to remit those monies on some other ground is, hence, immaterial so far as Porcelli's obligations were concerned.

Porcelli has an additional argument based on *United States v. Schwartz*, 924 F.2d 410 (2d Cir.1991). We there held that an unissued license to export arms which, had it been issued, would have been obtained by fraud, was not "property" within the wire fraud statute. "The government's interest in issuing its licenses ancillary to its regulatory programs" was said to be "no different than its interest in propounding and enforcing its other regulations with broad based applications that do not include the issuance of licenses." 924 F.2d

at 417. The court refused to consider the government's argument that its right to subject the arms intended for illegal shipment to seizure and forfeiture under statute and regulations was an "intangible property right of which it was deprived by appellants' fraudulent acquisition of the export licenses" because the district court did not instruct the jury on that theory. 924 F.2d at 418. Porcelli argues that the government's interest in *Schwartz* is "little different from the tax claim that New York State had in this case." But the collection of taxes in *Porcelli* was not aimed at regulating the gasoline industry, it was intended to gain revenue. As the government suggests, if an analogy is appropriate, the state taxes in *Porcelli* are more like the arms in *Schwartz* themselves, the search and seizure of which the *Schwartz* court did not reach, as opposed to the intangible piece of unissued paper.

Judgment affirmed.