UNITED STATES of America, Plaintiff,

v.

Virgil Wayne SAVELY, Defendant.

No. 88–10034–01.

United States District Court,
D. Kansas.

Feb. 2, 1993.

Lee Thompson, U.S. Atty., Wichita, KS, for plaintiff.

Cyd Gilman, Asst. Federal Public Defender, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

On March 9, 1989, the jury found the defendant, Virgil Wayne Savely, guilty of five counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of mail fraud, in violation of 18 U.S.C. § 1341.[1] Prior to sentencing, the defendant filed a written response (Dk. 53) disputing, *inter alia*, that portion of the pre-sentence report on restitution in which the prosecution alleged there were twenty-three victims which had sustained a combined loss of $139,694.25. The defendant argued that the government had not proved these losses with credible evidence and that restitution in this amount would be unfairly prejudicial to him. The defendant conceded that in proving the defendant guilty of the counts charged in the

---

1. The indictment charged that the defendant had committed these acts either in 1985 or 1986.

indictment the prosecution had established six victims with a combined loss of $71,665.00.

On June 5, 1989, the court sentenced defendant to three years imprisonment on count I, and on the remaining counts, the court suspended sentence and placed defendant on five-years probation commencing upon release from confinement and running concurrently. In addition, the court ordered defendant to pay as restitution to twenty-one victims the combined loss of $135,315.55. The defendant did not appeal.

On October 2, 1989, the defendant filed a motion to modify sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. (Dk. 57). The defendant asked the court to reduce the period of incarceration and the amount of restitution. Specifically, the defendant argued that his obligation for restitution should not commence until he was released and that upon release he would be incapable of making the large payments necessary for full restitution. The court denied the defendant's motion to modify. (Dk. 59).

On March 26, 1991, the defendant filed a "Motion" (Dk. 62) contending the order for restitution should be modified in light of the recent Supreme Court decision, *Hughey v. U.S.*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The defendant acknowledged that this court in sentencing him had properly interpreted the controlling Tenth Circuit precedent, *U.S. v. Duncan*, 870 F.2d 1532 (10th Cir.), *cert. denied*, 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989), which allowed an order of restitution to include losses caused by other criminal acts committed by the defendant that are significantly connected to those for which he has been convicted or pleaded guilty. The defendant next noted that in *Hughey* the Supreme Court limited restitution awards under the Victim and Witness Protection Act of 1982 ("VWPA") (18 U.S.C. §§ 3579 and 3580) to those losses caused by the particular conduct which was the basis of the offense of conviction. The defendant referred to his argument at the restitution hearing and in his written response to the pre-sentence report that any restitution should be limited to the acts upon which he had been convicted. The

defendant believed his failure to appeal this issue was excused by the controlling Tenth Circuit decision in *Duncan*. Based upon these points, the defendant requested the following relief:

Defendant Savely asserts that had he been sentenced after the *Hughey* case, *supra*, was issued, the restitution ordered would have been 63,650.55 less than the amount that was entered by the Court, $135,315.55. Fundamental principles of fairness support modifying the amount of restitution to $71,665.00.

(Dk. 62 at 3). In its response, the prosecution argued, without citation to case law or legal principles, that *Hughey* should not be applied retroactively because it was not "appropriate" and because it would "punish" the victims. (Dk. 63).

Believing the issues had not been briefed adequately, the court entered the following minute order on May 3, 1991:

The defendant's motion (Dk. 62) will not be considered or decided until the defendant submits an additional brief addressing the statutory authority for bringing such a motion at this time and the basis for applying retroactively the case of *Hughey v. United States* [495] U.S. [411], 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The Government will have ten days from the filing date of the defendant's brief to submit its position on these issues.

(Dk. 64).

On May 8, 1992, the defendant filed his supplement to the motion offering the following paragraph of argument in response to the court's questions:

Defendant asserts that there is no specific statutory authority known which relates directly to this issue. Instead, defendant Savely seeks the relief requested based upon its inherent supervisory power. The supervisory power theory "is premised on the inherent ability of the federal courts to 'formulate procedural rules not specifically required by the Constitution of the Congress.'" *United States v. McClintock*, 748 F.2d [1278] at 1284 (9th Cir.1984) (quoting *United States v. Hasting*, 461 U.S. 499, 505 [103 S.Ct. 1974, 1978, 76

L.Ed.2d 96] (1983)). A court's supervisory power permits the court to supervise the administration of criminal justice. *Id.* The supervisory power may be used not only to vindicate a defendant's rights, but also to preserve judicial integrity and/or to deter illegal or improper conduct. [*U.S. v.*] *Hasting*, supra [461 U.S. 499] at 505 [103 S.Ct. 1974 at 1978, 76 L.Ed.2d 96 (1983)]; *United States v. Carrasco*, 786 F.2d 1452 (9th Cir.1986). "Under their supervisory power, courts have substantial authority to oversee their own affairs to ensure that justice is done." *United States v. Simpson*, 927 F.2d [1088] at 1089 [ (9th Cir.1991) ].

(Dk. 66 at 3). The defendant's counsel does not explain why she has concluded that the statutes and rules fail to afford her client an avenue for relief. None of the cases cited

stand for the proposition that a court may use its supervisory powers to correct at any time an unlawful sentence.[2] None of the cases cited hold that supervisory powers may be asserted without giving consideration to whether the argued law should be applied retroactively.[3] At most, the defendant has argued the instant motion falls within the broad formulations of supervisory power that she has found in her research.[4] Besides reiterating the inequity that the victims would suffer if the court were to apply *Hughey* retroactively, the prosecution takes issue with whether any of three purposes of supervisory powers would be served in this instance.[5] The defendant has not filed a reply brief.

■ The court will not stumble down the poorly marked foot path of supervisory powers when the paved avenues of Rule 35 of the

2. Indeed, all three cases cited turn on prosecutorial or governmental actions and involve the exercise of supervisory powers in the direct review of the underlying conviction. *U.S. v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (Supervisory power did not justify reversing conviction for prosecutorial misconduct when error was harmless); *U.S. v. Simpson*, 927 F.2d 1088 (9th Cir.1991) (Supervisory power did not warrant dismissing the indictment for the government's investigatory tactics); *U.S. v. Carrasco*, 786 F.2d 1452 (9th Cir.1986) (Supervisory power did not authorize the court to interfere with the government's decision to prosecute on what the court considered to be an unnecessary second count); *U.S. v. McClintock*, 748 F.2d 1278 (9th Cir.1984) (Supervisory power exercised to determine whether the prosecution's breach of a discovery agreement required dismissal of the indictment), *cert. denied*, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). The defendant's failure to cite any cases similar to the facts here may indicate that the case law does not favor the peremptory use of "supervisory powers" outside the established statutory schemes for post-conviction attacks on sentences. Indeed, a district court's "inherent power to correct an erroneous sentence continues" only so long as either party can file a notice of appeal. *U.S. v. Uccio*, 917 F.2d 80, 84 (2nd Cir.1990). Nor has the defendant shown that this case presents such unusual and extraordinary circumstances which would compel this court to exert its supervisory powers and entertain jurisdiction of her "Motion." *See, e.g., Wheeler v. U.S.*, 640 F.2d 1116, 1121–1122 (9th Cir.1981) (Allowed collateral attack on a post-sentencing order which restricted the defendant's mail privileges).

3. Quite frankly, after a year to brief the legal issues identified by the court, the defendant's

counsel has still avoided addressing them and has chosen instead to seek relief on a plea for equity couched in the amorphous doctrine of supervisory powers. A fair reading of the defendant's supplement is that he concedes both issues. In other words, *Hughey* may not be applied retroactively, and the court is without statutory authority and must resort to some inherent power of righting a wrong whenever a party finds one. The court seriously questions whether the defendant may avoid retroactivity rules by simply styling his motion as a request for the court to exercise its supervisory powers. *See generally, U.S. v. Ayala*, 894 F.2d 425, 429 (D.C.Cir.1990).

4. For obvious reasons, the case law circumscribes the exercise of supervisory power on collateral attacks in contrast to that employed on direct appeals. *See generally Nieto v. Sullivan*, 879 F.2d 743, 749 (10th Cir.) ("The standard that governs in a habeas proceeding 'is the narrow one of due process, and not the broad exercise of supervisory power.' " (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986))), *cert. denied*, 493 U.S. 957, 110 S.Ct. 373, 107 L.Ed.2d 359 (1989); *Wright v. U.S.*, 732 F.2d 1048, 1056 (2nd Cir. 1984) (" 'It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.' " (quoting *U.S. v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979))), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985).

5. The court agrees with the prosecution that the defendant has not shown how any of the three purposes for exercising supervisory powers would be served in this case.

Federal Rules of Criminal Procedure and 28 U.S.C. § 2255 may be available.[6] As phrased by the court, the defendant's argument is that the order of restitution was illegal because it includes amounts to individuals who were not victims of the offenses for which he was convicted.[7] Consequently, the logical first choice is Rule 35. In an early case, the Supreme Court said it was proper to invoke Rule 35 when "the only question ... [was] whether the sentence imposed was illegal on its face." *Heflin v. U.S.*, 358 U.S. 415, 418, 79 S.Ct. 451, 453, 3 L.Ed.2d 407 (1959).

■ Although Rule 35 has since been substantially amended, the version of Rule 35(a) applicable to offenses committed prior to November 1, 1987 provides[8]:

(a) **Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

A Rule 35 motion is "'made in the original case.'" *U.S. v. Henry*, 709 F.2d 298, 313 (5th Cir.1983) (quoting *Heflin*, 358 U.S. at 418 n. 7, 79 S.Ct. at 453 n. 7). Rule 35 authorizes a court to correct an illegal sentence at any time, and the rule may be invoked even if the issue was not raised on direct appeal. *U.S. v. Vigil*, 818 F.2d 738, 740 (10th Cir.1987); *U.S. v. Finley*, 783 F.Supp. 1123, 1127 (N.D.Ill.1991); *see Callanan v. U.S.*, 364 U.S. 587, 589 n. 3, 81 S.Ct. 321, 322 n. 3, 5 L.Ed.2d 312 (1961). The failure to object at trial does not constitute a waiver, for it is plain error to impose an illegal sentence. *U.S. v. Vance*, 868 F.2d 1167, 1169 (10th Cir.1989). Successive Rule 35 motions are permitted. *Heflin v. U.S.*, 358 U.S. at 418 n. 7, 79 S.Ct. at 453 n. 7; *U.S. v. Mazak*, 789 F.2d 580, 581 (7th Cir.

1986). Consequently, the defendant appears to face no procedural barriers under Rule 35(a), and if he did, he would not be faulted for failing to object or appeal given the established precedent in *Duncan*. *See U.S. v. Novey*, 922 F.2d 624, 629 n. 5 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).

■ A sentence is illegal if it exceeds the statute under which the charge is lodged or, in other words, is one which the judgment of conviction does not authorize. *U.S. v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); *U.S. v. Peredo*, 884 F.2d 1029, 1031 (7th Cir.1989); *see also Hill v. U.S.*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (The "narrow focus" of Rule 35(a) is not implicated absent arguments that the punishment exceeds that prescribed by statute, that the punishment includes multiple terms for the same offense, or that "the terms of the sentence itself [are] legally or constitutionally invalid in any other respect.") In other words, a Rule 35(a) motion is proper "only when the sentence imposed exceeds the statutorily-authorized limits, violates the Double Jeopardy Clause, or is ambiguous or internally contradictory." *U.S. v. Pavlico*, 961 F.2d 440, 443 (4th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 144, 121 L.Ed.2d 96 (1992); *see U.S. v. Celani*, 898 F.2d 543, 544 (7th Cir.1990).

■ Courts have considered challenges to the legality of restitution orders as properly brought under Rule 35(a). *U.S. v. Guardino*, 972 F.2d 682 (6th Cir.1992); *U.S. v. Kress*, 944 F.2d 155, 158 n. 4 (3rd Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1163, 117 L.Ed.2d 410 (1992); *U.S. v. Celani*, 898 F.2d at 544; *See, e.g., U.S. v. Finley*, 783 F.Supp.

---

**6.** It should be noted that either trek, the foot path or the paved avenue, would require the court to be its own guide, for the parties have offered little help in the way of legal argument and authority. The court has considered denying the defendant's motion for his failure to invoke properly the jurisdiction of this court and to identify the law in support of his requested relief. Instead of waiting for a proper motion, the court will indulge the defendant and address, *sua sponte*, those legal issues which court considers controlling.

**7.** Restitution under the VWPA is a criminal penalty, is an element of the criminal sentence, and serves the same traditional purposes of criminal punishment. *U.S. v. Snider*, 957 F.2d 703, 706–07 (9th Cir.1992). In this regard, restitution under the FPA is indistinguishable in function and purpose.

**8.** References to Rule 35(a) in this order are to the version of the rule quoted above.

at 1127. There is nothing remarkable in the conclusion represented by these cases. A restitution order unauthorized by statute is an illegal sentence for which a defendant may file a Rule 35(a) motion at any time.

■ Since the defendant's arguments appear suited for Rule 35(a) and there are no procedural bars to the motion, the court now will determine if the restitution order entered against defendant Savely is an illegal sentence. In this regard, the court will assume the defendant is contending the restitution order exceeds what is statutorily allowed under the VWPA as it has been interpreted by the Supreme Court in *Hughey v. U.S.*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). *Hughey* holds "that the language and structure of the Act ["VWPA"] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413, 110 S.Ct. at 1981. A quick comparison of the judgment and commitment order and the indictment reveals that the restitution award entered against the defendant Savely includes losses which were not caused by the specific conduct within the seven counts on which he was convicted. Consequently, the court's order dealing with restitution must be vacated and the defendant must be resentenced if *Hughey* is applicable.

■ The court must first determine under which statute the defendant was ordered to pay restitution. For offenses committed prior to November 1, 1987, the court could order the defendant to pay restitution under the VWPA or the Federal Probation Act ("FPA"), 18 U.S.C. § 3651 (1982) (repealed effective November 1, 1987) as a special condition to probation. The judgment and commitment order reflects that the court acted pursuant to the 18 U.S.C. § 3663, a provision of the VWPA, in entering restitution. When the court orally pronounced sentence, however, it said that the restitution was being ordered pursuant to 18 U.S.C. § 3651, a provision of the FPA. The sentence orally pronounced from the bench is the sentence and controls over any variance or conflict with the written judgment and commitment order. *U.S. v. Villano*, 816 F.2d

1448, 1450–52 (10th Cir.1987) (en banc). When the words spoken from the bench are ambiguous, then resort to the written order is appropriate to clarify the judge's intention. *Id.* In this instance, the orally pronounced sentence unambiguously refers to § 1851 as the statutory basis for entering restitution against defendant Savely. Contrary to what both parties have argued, the court ordered restitution pursuant to the FPA, not the VWPA.

The question now is whether the award of restitution against defendant Savely was proper under the FPA. In an earlier decision, the Tenth Circuit held that restitution may be ordered for all losses related to a scheme or conspiracy charged in the indictment even though the losses are not associated with the counts on which the defendant was convicted. *U.S. v. Vance*, 868 F.2d at 1170–71. Though *Vance* would seem to justify the restitution order here, it is no longer controlling in this circuit:

Even were we to conclude that the district court had ordered restitution under the FPA, we would apply *Hughey's* limitation to restitution awards under that statute and reach the same result. The FPA's provision for restitution is more specifically tied to the offense of conviction than the language of the VWPA. The FPA provides that "the defendant— ... May be required to make restitution or reparation to the aggrieved parties for actual damages or loss *caused by the offense for which conviction was had.*" 18 U.S.C. § 3651 (emphasis added). Prior to *Hughey,* this language led several circuits to conclude that restitution as a condition of probation could only be ordered for the amount of the loss occasioned by the offense for which the defendant was convicted. (citations omitted). After *Hughey,* any other conclusion seems unsupportable. *But see, United States v. Hunt*, 940 F.2d 130, 131 (5th Cir.1991); *United States v. Duvall*, 926 F.2d 875, 876–77 (9th Cir. 1991). As a result of *Hughey,* we believe that *United States v. Vance*, 868 F.2d 1167, 1170 (10th Cir.1989), no longer controls restitution orders under the FPA.

*U.S. v. Cook,* 952 F.2d 1262, 1264 n. 3 (10th Cir.1991). Only weeks ago, the Tenth Circuit reiterated that *Vance* was no longer viable law on restitution orders pursuant to the FPA. *U.S. v. Brewer,* 983 F.2d 181 (10th Cir.1993). Consequently, the fact this court acted under the FPA rather than the VWPA is a distinction without a difference, for the restitution order is not permitted under either statute as they are presently interpreted. The issue now is whether the *Cook* decision, which is little more than an extension of *Hughey,* is controlling here.

The retroactive application of *Hughey* has been addressed by two circuit courts reaching opposite results. In *U.S. v. Bennett,* 943 F.2d 738, 741 (7th Cir.1991), the defendant filed a "motion for reconsideration of his sentence" contending that the restitution order violated the terms of the VWPA as construed in *Hughey.* The district court denied the motion finding *Hughey* inapplicable. The Seventh Circuit agreed and held in the alternative:

> Moreover, Bennett is not entitled to retroactive application of *Hughey,* regardless of whether that case would help him or not. Bennett is here because, without dispute, he violated the terms of his parole by failing to pay restitution. Those parole terms were set when Bennett was sentenced in 1985, and Bennett had his chance to appeal that sentence and those parole terms at that time. Even when the issue is constitutional, defendants generally are not entitled to collaterally attack their convictions or sentences on the basis of a change in the law. *See Teague v. Lane,* 489 U.S. 288 [309–310], 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). All the more, a defendant should not be allowed, years later, to take advantage of a change in statutory construction that he was free to argue on direct appeal.
>
> This conclusion makes sense. Bennett's case was a plea bargain. By agreeing to pay the restitution at issue, Bennett received lighter treatment, perhaps in the form of having fewer counts of mail fraud

charged against him. Now that the years have passed and adverse witnesses are probably unavailable, Bennett wants out of the deal. He should no more be allowed to turn back the clock than should another defendant who might petition for a refund of fines paid in restitution many years ago. "[T]he principle of finality ... is essential to the operation of our criminal justice system." *Teague* [489 U.S. at 309], 109 S.Ct. at 1074. That principle decides Bennett's appeal.

943 F.2d at 741. Though this rationale is obviously linked to the facts before it, the holding was still articulated in terms broad enough to encompass most attempts at applying *Hughey* retroactively. Nonetheless, the Seventh Circuit appears to have since largely ignored *Bennett.*

In *U.S. v. Braslawsky,* 951 F.2d 149 (7th Cir.1991), the district court was reversed on the first appeal for a sentencing error. While this first appeal was pending, the *Hughey* decision was handed down. The defendant then appealed the sentence received on remand arguing the restitution order was contrary to *Hughey.* The panel on the second appeal held that the restitution amount exceeded what was authorized under VWPA as interpreted by the Supreme Court. In an unpublished decision issued little more than a month ago, *U.S. v. Livingston,* 983 F.2d 1073 (7th Cir.1992)[9], another panel struck down a restitution order applying *Hughey* retroactively. The defendant Livingston was sentenced two months before *Hughey* was decided, and he did not appeal but filed a Rule 35(a) motion almost two months after *Hughey.* The panel in *Livingston* included in the opinion all the dates relevant to the issue of retroactivity but did not even mention the legal implications. .

The other circuit to have confronted this issue is at odds with the Seventh Circuit:

> We note that one panel of the Seventh Circuit has held that *Hughey* should not be retroactively applied. *See United States v.*

---

9. The court appreciates that *Livingston* cannot be cited or used as precedent in the Seventh Circuit. Rule 53(b)(2)(iv) of the United States Court of Appeals for the Seventh Circuit. The court here believes that *Livingston* may be some indication that the Seventh Circuit does not consider *Bennett* to be controlling in all instances.

*Bennett,* 943 F.2d 738, 741 (7th Cir.1991) (citing *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). We disagree. Initially, we note that a subsequent panel of the Seventh Circuit applied *Hughey* retroactively to vacate a restitution order. *United States v. Braslawsky,* 951 F.2d 149 (7th Cir.1992). We also feel that *Bennett*'s reliance on *Teague* is misplaced. *Teague* prohibited the retroactive application of a new constitutional rule of criminal procedure to an existing conviction. *Teague* does not bar the retroactive application of *Hughey* because, unlike *Teague, Hughey* did not announce a new constitutional rule but merely interpreted a statute, and, again unlike *Teague, Hughey* did not involve an attack on a conviction but only on a sentence.

*U.S. v. Guardino,* 972 F.2d 682, 687–88 n. 7 (6th Cir.1992). The Court of Appeals reversed the district court's denial of the defendant's Rule 35(a) motion and remanded the case for resentencing. *Id.* at 688.

Since neither the Seventh Circuit nor the Sixth Circuit explains in much detail the legal basis for its retroactivity holding or cites much authority for it, the court is not comfortable with picking one decision over the other simply from the force of the arguments made there. The court's research has raised several issues which may explain why the circuit courts took a cursory approach. A summary of its research will demonstrate why this court believes that *Hughey* should be applied retroactively on a Rule 35(a) motion.

At the outset, the court was concerned with whether the rigid rules of retroactivity set forth in *Teague* and its progeny govern a motion brought under Rule 35(a). In other words, is it a collateral attack for purposes of *Teague* when a defendant challenges the legality of his sentence under Rule 35(a)? There is an established line of precedent in the Fifth Circuit and the Eleventh Circuit which distinguishes between relief under Rule 35(a) and the § 2255.

Citing the Supreme Court case of *Heflin v. U.S.,* the Fifth Circuit held that a Rule 35 motion was not a collateral attack and, therefore, the rules limiting a retroactive application of changes in the law on collateral attacks were not controlling. *U.S. v. Shillingford,* 586 F.2d 372, 375 (5th Cir.1978) ("Thus, the appeal from the denial of Shillingford's Rule 35 motion is a part of the appellate process from his original conviction rather than a collateral attack on his sentence. Shillingford is therefore entitled to an examination of this sentence in light of *Simpson.*") (quoted in part in *U.S. v. Jones,* 856 F.2d 146, 148 (11th Cir.1988)). In effect, *Shillingford* stands for the proposition that the rules of retroactivity applied to a pending case are also applicable to a case properly challenged by a Rule 35(a) motion. The Fifth Circuit's conclusion is premised on what was said in *Heflin*—a Rule 35(a) motion is made in the original case—and what was done in *Heflin*—a new construction of the Federal Bank Robbery Act made in *Prince v. U.S.,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) was applied retroactively to the defendant. In another case, the Fifth Circuit noted that "Rule 35 differs from section 2255 in that new decisions are more easily applied retroactively in the original case." *United States v. Henry,* 709 F.2d at 313 (citations omitted). Even more recently, the Fifth Circuit said that a Rule 35(a) motion is reviewed "under a less strict standard than a § 2255 motion." *U.S. v. Stumpf,* 900 F.2d 842, 845 n. 2 (5th Cir.1990).

Though not expressed in these terms, the Sixth Circuit's differences with the Seventh Circuit and even the different results in the Seventh Circuit's own decisions could be explained by this distinction between Rule 35(a) and § 2255. In *Bennett,* the defendant filed a motion to reconsider which the Seventh Circuit treated as a collateral attack on sentence. 943 F.2d at 741. In *Livingston,* the defendant filed a Rule 35(a) motion, and the Seventh Circuit never raised the issue of retroactivity. In *Guardino,* the defendant filed a Rule 35(a) motion, and the Sixth Circuit found *Teague* inapposite, in part, because this was an attack only on the sentence, not the conviction. 972 F.2d at 688.[10]

---

**10.** A similar approach was taken in *U.S. v. Bermudez,* 742 F.Supp. 556 (C.D.Cal.1990), where

the court retroactively applied a Ninth Circuit opinion interpreting "burglary." The court

If the court were to follow *Shillingford* and treat Savely's motion under Rule 35(a) as part of the appellate or direct review process from his original conviction, then the result is clear. *Hughey* and *Cook* are applicable, and the defendant must be resentenced. *See U.S. v. Novey,* 922 F.2d at 629. Rather than relying on this approach alone, the court believes it is necessary also to consider the retroactivity of *Hughey* and *Cook* under the principles of *Teague.*

 In *Teague*, a plurality of the Court held that "new constitutional rules of criminal procedure" would not be applied retroactively on collateral review of final convictions unless either of the two exceptions is met. *Teague v. Lane,* 489 U.S. 288, 305–10, 109 S.Ct. 1060, 1072–75, 103 L.Ed.2d 334 (1989).[11] A majority of the court has since embraced the principles in *Teague. See, e.g., Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Stringer v. Black,* —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). A "new rule" comes about when new ground is broke, a new obligation is imposed on the States or the Federal Government, or the result is not dictated by precedent existing at the time the conviction became final. *Penry,* 492 U.S. at 314, 109 S.Ct. at 2944. A conviction is final when the judgment of conviction is rendered, the opportunity for appeal is gone, and the time to petition for certiorari is past. *Williams v. Dixon,* 961 F.2d 448, 453 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992). When federal habeas relief is

grounded on a rule coming down after the final conviction, the court must determine first whether the argued rule is "new," and if it is, then determine second whether either exception applies. A new decision, like *Cook,* which expressly overrules the prior controlling precedent, *Vance,* obviously "breaks new ground" and, in addition, has the effect of imposing a new obligation on the Federal Government.

The first exception is that a new rule will be applied retroactively if it places " 'certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to prescribe.' " *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073. This exception was expanded in *Penry* to encompass "substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed." 492 U.S. at 329, 109 S.Ct. at 2952. Thus, the first *Teague* exception "cover[s] not only rules forbidding criminal punishment of certain kinds of primary conduct, but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." 492 U.S. at 330, 109 S.Ct. at 2953. Using this exception, two circuits have applied retroactively the new double jeopardy rule announced in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *McIntyre v. Trickey,* 975 F.2d 437, 439 (8th Cir.1992); *Johnson v. Howard,* 963 F.2d 342, 344–345 (11th Cir. 1992). Both circuits considered the double jeopardy clause of the Fifth Amendment to be a basic constitutional guarantee falling within the terms of *Teague's* first exception.

granted the defendant's Rule 35(a) motion holding that two of the defendant's prior burglary convictions could not be used to enhance his sentence. In analyzing retroactivity, the court considered the distinction between Rule 35(a) and a collateral attack on conviction:

Because a Rule 35(a) motion seeks only to correct an illegal sentence, rather than to vacate a conviction, the societal interest in finality is not as strong. In *Callanan v. United States,* 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961), the Court ruled that a motion to correct an illegal sentence is available "when the claim is based on the face of the indictment *even if such claim had not been raised on direct appeal." Id.* at 589, 81 S.Ct. at 322 (emphasis added). (citations omitted). The finality of a

conviction is important because of the burden caused by the need for a new trial, or the release of a convicted defendant because effective retrial may no longer be feasible years later. (citation omitted). On the other hand, the costs incurred in correcting an illegal sentence are far smaller than those incurred in rectifying a procedural error by retrying the case or releasing the prisoner. Thus, society's interest in finality is less compelling when the challenge is only to the sentence and not to the conviction.

742 F.Supp. at 558–59.

11. *Teague* principles have been applied to federal as well as state convictions. *Gilberti v. U.S.,* 917 F.2d 92, 95 (2nd Cir.1990).

The second *Teague* exception reaches those "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990). An example of such an exception is the right to counsel in criminal trials for serious offense. *Id.* For fairness and accuracy to be threatened, the new rule must have the same primacy and importance as the right to counsel. *Id.*

The narrow terms of either exception do not appear to be satisfied in this case. First, the court has no basis to question the authority of Congress to proscribe conduct amounting to wire fraud or mail fraud. It could be argued, however, that the fundamental guarantee of due process is violated when one is punished for an act which is not a crime by statute. *See U.S. ex rel. Vanskike v. O'Leary*, 719 F.Supp. 659, 666 (N.D.Ill.1989). Second, a new statutory interpretation of the FPA does not resemble any watershed rule or bedrock principle of criminal proceedings. Although only an untested extension of the first exception could save the defendant, there are some decisions, besides *Guardino*, which limit the *Teague* doctrine to new constitutional rules of criminal procedure.

In *Davis v. U.S.*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), a federal prisoner sought relief under § 2255 based on a change in circuit court law occurring after his conviction had become final. The later circuit decision had interpreted a federal statute so that it no longer reached the conduct for which the prisoner had been convicted. The Supreme Court articulated this test: "whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t ... present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* at 346, 94 S.Ct. at 2305 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Circuits have looked to *Davis* rather than *Teague* for the controlling rule when a federal prisoner petitions for habeas corpus relief arguing that a subsequent circuit opinion has narrowed the scope of a federal statute so as to exclude the petitioner's very conduct from criminal penalty. *U.S. v. Sood*, 969 F.2d 774 (9th Cir.1992); *U.S. v. McClelland*, 941 F.2d 999 (9th Cir.1991); see *Porcelli v. U.S.*, 964 F.2d 1306 (2nd Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 212, 121 L.Ed.2d 151 (1992); *Borre v. U.S.*, 940 F.2d 215 (7th Cir.1991). In *Sood*, the Ninth Circuit retroactively applied its earlier decision of *U.S. v. Bordallo*, 857 F.2d 519 (9th Cir.1988), *amended*, 872 F.2d 334 (9th Cir.1989), *cert. denied*, 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989), in which it was held that Guam was not a "state" under the bribery statute of 18 U.S.C. § 666. In *McClelland*, the Ninth Circuit retroactively applied its earlier decision *United States v. Aguon*, 851 F.2d 1158 (9th Cir.1988) (en banc), *overruled by, Evans v. U.S.*, —— U.S. ——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992), in which it was held that inducement was an essential element of the offense of extortion under 18 U.S.C. § 1951.

In *Sood* and *McClelland*, the Ninth Circuit first looked to the analogous situation created when the Supreme Court in *McNally v. U.S.*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), differed with the circuit courts in holding that the mail fraud statute protected only money or property and not intangibles. Courts, including the Tenth Circuit, considered *McNally* to be retroactive. *U.S. v. Mitchell*, 867 F.2d 1232 (9th Cir.1989) (per curiam); *U.S. v. Shelton*, 848 F.2d 1485 (10th Cir.1988) (en banc); *Ingber v. Enzor*, 841 F.2d 450 (2nd Cir.1988). The Ninth Circuit in *McClelland* observed:

> Those courts distinguished the applicability of retroactivity in the situation presented to them—the retroactive application of a substantive non-constitutional decision concerning the reach of a federal statute—from the situation that gives rise to the analysis set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)—retroactive application of new rules of criminal procedure.

941 F.2d at 1001 (citations omitted); *see Sood*, 969 F.2d at 776. Both *Sood* and *McClelland* went on to apply the fundamental tenet of *Davis* that there is "a complete miscarriage of justice" justifying collateral relief when one is convicted and punished for

conduct that the law does not consider criminal. 969 F.2d at 775–76; 941 F.2d at 1001.

 The reasoning in the above cases is relevant to the case *sub judice.* In effect, movant Savely has been punished by the restitution order for acts which the statute does not consider criminal unless the defendant is indicted and convicted of them. What is retroactive here is a subsequent decision on the substantive scope of a federal criminal statute and not a "new constitutional rule of criminal procedure" as in *Teague.* The FPA, and for that matter the VWPA, did not " 'mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards.' " *U.S. v. Shelton,* 848 F.2d at 1489 (quoting *Strauss v. U.S.,* 516 F.2d 980, 983 (7th Cir.1975)). The *Hughey* decision simply declared what the VWPA meant from its enactment, and prior interpretations of it must now be considered as having been always invalid. *Shelton,* 848 F.2d at 1490. "[F]ull retroactivity [is] a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place." *U.S. v. Johnson,* 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982). In such circumstances, the principle of finality in a criminal sentence and the costs of resentencing are outweighed by what would otherwise be a complete miscarriage of the justice system. Persuaded principally by the analysis immediately above and less by the notion that a Rule 35 motion is a part of the original review of a sentence, the court grants the defendant's Rule 35 motion, vacates the restitution award, and orders a resentencing on the amount of restitution.

IT IS THEREFORE ORDERED that the court vacates only that portion of Savely's sentence relating to restitution and orders Savely to appear before the court with appointed counsel, Cyd Gilman, at a time set by the court for resentencing in the amount of restitution.