**UNITED STATES of America, Plaintiff,**

v.

**Virgil Wayne SAVELY, Defendant.**

**No. 88–10034–01.**

United States District Court, D. Kansas.

July 16, 1993.

Memorandum Modifying Restitution on Reconsideration Aug. 4, 1993.

Kim Fowler, Asst. U.S. Atty., Wichita, KS, for plaintiff.

Cyd Gilman, Asst. Federal Public Defender, Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the government's motion to reconsider the order

filed February 2, 1993, and published at 814 F.Supp. 1519 (D.Kan.1993). By that order, the court retroactively applied the decisions of *Hughey v. U.S.*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), and *U.S. v. Cook*, 952 F.2d 1262 (10th Cir.1991), and vacated only that portion of the defendant's sentence relating to restitution and ordered him to appear before the court with appointed counsel for resentencing as to the amount of restitution. Because its original order addressed in substantial detail the reasons and case law supporting its decision, the court will address the government's arguments in summary fashion.

The government first contends the court is wrong for considering the sentence illegal, because it was proper under the Tenth Circuit precedent controlling at the time of imposition. Such an argument misapprehends the irrefutable, that is, if *Hughey* and *Cook* are retroactive here and if the restitution order exceeds the statutory bounds established by these decisions and current precedent, then the restitution portion of the sentence is illegal despite the fact that the sentence was consistent with precedent controlling when it was imposed. *See U.S. v. Woods*, 986 F.2d 669, 678 (3rd Cir.1993), *petition for cert. filed*, 62 U.S.L.W. 3001 (U.S. June 21, 1993) (No. 92–2007). In this regard, the government argues the ordered restitution is lawful even after *Hughey* because all of the losses were merely part of the scheme for which the defendant was convicted. The government cites in support *U.S. v. Chaney*, 964 F.2d 437 (5th Cir.1992), and *U.S. v. Brothers*, 955 F.2d 493 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992). The government's argument and its citations stand for an interpretation that the Tenth Circuit and a majority of its sister circuits have rejected. *U.S. v. Cronin*, 990 F.2d 663, 666 (1st Cir.1993) (citing *U.S. v. Wainwright*, 938 F.2d 1096 (10th Cir.1991) [1]); *see U.S. v. Patty*, 992 F.2d 1045, 1050 (10th Cir.1993). Consequently, the res-

titution order is illegal in the event that *Hughey* and *Cook* apply retroactively.

The government also argues the court was mistaken for thinking that the restitution was ordered under the Federal Probation Act ("FPA"), 18 U.S.C. § 3651, rather than the Victim and Witness Protection Act ("VWPA"), (18 U.S.C. §§ 3579 and 3580). The government first submits that the defendant was given a three-year term of imprisonment, not probation. As the defendant points out, the court sentenced him to probation for five years on counts II, III, IV, V, VI, and VIII. Therefore, restitution may be considered a condition of probation.[2] The government next believes that the order of restitution "would have been an illegal sentence" under the FPA as it had been interpreted at the time of sentencing and cites in support *U.S. v. Gering*, 716 F.2d 615 (9th Cir.1983). Not to belabor the obvious, but Tenth Circuit precedent would have been controlling, in particular, *U.S. v. Vance*, 868 F.2d 1167 (10th Cir.1989), which was decided almost three months before Savely's sentencing. The Tenth Circuit held in *Vance* that when a defendant is charged with a conspiracy or fraudulent scheme the court may order restitution for not just those losses associated with the counts on which the defendant was convicted but for all losses stemming from the charged scheme or conspiracy. 868 F.2d at 1170. Thus, the restitution order here would have been lawful under *Vance*. In *Cook*, the Tenth Circuit rejected *Vance* as a proper interpretation of the FPA in light of *Hughey*. In sum, the court believes it was correct in thinking that restitution may have been ordered under the FPA but that this point was not significant because the order was not proper under either act as they had been interpreted subsequent to sentencing.

Plainly, the central issue for the court was retroactivity. The government now contends that the court should have started and ended its analysis with the retroactivity principles from *Teague v. Lane*, 489 U.S. 288, 109 S.Ct.

---

1. In *Wainwright,* the defendant was charged with a scheme or artifice to obtain monies from six different banks in Kansas by forging stolen checks and then cashing or depositing them. The defendant pled guilty to one count alleging a scheme to defraud only one of the six banks. The district court ordered restitution equal to one-half of the total losses suffered from all six banks. The Tenth Circuit held that the sentence was illegal as imposing a sentence which " 'the

judgment of conviction did not authorize.' " 938 F.2d at 1098 (quoting *U.S. v. Morgan,* 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954)). The restitution order was vacated except for the portion applying to the count on which the defendant pled guilty.

2. The defendant now suggests another complication. Namely, he was sentenced after the FPA

1060, 103 L.Ed.2d 334 (1989).[3] Absent from its blanket contention is any reason for why the court should choose the rules of retroactivity for new rules of criminal procedures that are set forth in *Teague* over the rules of retroactivity for substantive non-constitutional decisions concerning the reach of a federal statute that are set forth in *Davis v. U.S.*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). The court explained its reasons for making this choice, and the government does not refute them. As to the application of the *Davis* rules, the government offers no real or meaningful argument in support of its conclusion that "the court wrongly characterized the additional restitution ordered as a complete miscarriage of justice."

Finally, the government complains that the court down played and probably forgot the victims' concerns in its reasoning and holding:

> [T]he court seems to downplay the effect of this defendant's activities on the victims.... While it may be that a long time has passed since the defendant was convicted, it will be forever in the memory of those involved. The memories of the victims who testified at trial that their entire lives had been destroyed and that they had lost businesses and customers cultivated over a lifetime. The memories of the prosecutors who saw the tears the victims cried because they felt stupid for having believed the defendant are still vivid. In the stories of the sleepless nights the victims spent wondering how to pay their debts and ultimately realizing they had no alternative but to file bankruptcy.... In the final unappealed judgment of this court the victims were important. It is easy, after the passage of time to forget their facts

and their names, maybe even their suffering. The court is urged not to forget them.

(Dk. 69 at 9). The court assures the government's counsel that it has not forgotten the victims or their plight. The court believes it carried through with its responsibility of applying the relevant law to the facts before it. In deciding whether there has been a complete miscarriage of justice, the victims' harm is a factor, but not in the form of such pleas of sympathy as offered by the government here. *See U.S. v. Woods*, 986 F.2d at 679–80. The court is not swayed.

Since its order was filed, the Third Circuit has tackled the issue and provided the first meaningful discussion by an appellate court of *Hughey's* retroactivity in a Rule 35 setting. *U.S. v. Woods*, 986 F.2d 669 (3rd Cir. 1993), *petition for cert. filed*, 62 U.S.L.W. 3001 (U.S. June 21, 1993) (No. 92–2007). After noting the gap in legal authorities on what, if any, rules of retroactivity govern Rule 35 motions, the court decided that it would follow the trend set by the Supreme Court and apply the general rules of retroactivity. 986 F.2d at 675 n. 10. It then laid out the separate retroactivity standards for rules of criminal procedure and substantive criminal law and found that *Hughey* did "not fall neatly under either" standard. 986 F.2d at 676–77. Believing that *Hughey* fell somewhere between the two standards, the court suggested a heightened *Davis* standard influenced by the two "animating principles underlying the two retroactivity doctrines"— the interest in finality and the avoidance of serious injustice. 986 F.2d at 678.

Under the facts of its case, the Third Circuit found that the defendant would not suffer a miscarriage of justice if *Hughey* were not retroactively applied. The court considered a number of factors. First, the

---

was repealed. This complication does not appear serious. *See U.S. v. Brewer*, 983 F.2d 181, 183 n. 1 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993).

**3.** The government counters the court's criticism about the parties' lack of briefing on the retroactivity issue by saying that the decisions eventually relied upon by the court were decided after they submitted their briefs. Such a comment compels a response. Neither party cited a single decision dealing with retroactivity. No one mentioned or discussed the fundamental principles of

*Teague* or *Davis*, both of which were decided well before any briefs were submitted. The decision of *U.S. v. Bennett*, 943 F.2d 738, 741 (7th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), was filed more than eight months before the parties filed their response to the court's minute order in which they were asked to brief the issue of the retroactivity of *Hughey*. Indeed, the court could find only one decision of significance, *U.S. v. Guardino*, 972 F.2d 682 (6th Cir.1992), cited by the court that was decided after the parties filed their briefs. The passage of time is no justifiable excuse for the parties' insufficient briefs.

district court expended substantial time and effort to ensure the accuracy of the restitution order and the defendant did not contest that such sums were owed. 986 F.2d at 679. The Third Circuit specifically explained:

> Woods does not deny—nor does it appear that he could—that he was liable to the Safeguard investors for restitution that could have been enforced through a *civil* proceeding. Woods' underlying civil liability to the Safeguard investors further convinces us that by leaving his restitution payments to those investors undisturbed, we will not cause the type of miscarriage of justice contemplated by *Davis* or the exceptions to *Teague.*

986 F.2d at 689–90. Another factor was that Woods had paid full restitution and now was seeking the government "to disgorge money it no longer" had because of payment over to the injured investors. 986 F.2d at 680. Noting the sovereign immunity issues and jurisdictional issues that would face the defendant, the court concluded that recovery was "highly unlikely." 986 F.2d at 680. Because the defendant only wanted the return of money, the Court believed the "considerations in favor of retroactive relief" were far less compelling than if the defendant's liberty was at stake. 986 F.2d at 680–81. The Third Circuit stressed the importance of these factors:

> In concluding that Woods has not demonstrated that the restitution order resulted in the type of miscarriage of justice contemplated by *Teague* or *Davis,* we have placed considerable weight upon the improbability of Woods' ability to recover the money in conjunction with the fact that Woods claims to have been wrongfully deprived not of his liberty, but of his money, to which he had a doubtful claim under the circumstances.

986 F.2d at 680. The Third Circuit further discussed these same considerations comparing restitution to a civil judgment and emphasizing that the interest in finality is particularly weighty once the sentence is served and the restitution is paid. 986 F.2d at 681.

The court believes it appropriate to reconsider its ruling in light of *Woods* and to hear the parties' respective positions on that decision and the factors discussed under it. The parties may present their arguments and any relevant evidence at a hearing scheduled for July 23, 1993, at 2:30 p.m. at the Federal Courthouse in Wichita, Kansas, courtroom 407. Additionally, the court would welcome written briefs on these same matters.

IT IS THEREFORE ORDERED that the government's motion to reconsider (D. 69) is denied;

IT IS FURTHER ORDERED that the court *sua sponte* will reconsider its ruling in light of *Woods* and the factors discussed therein. The court will hear the parties' arguments and evidence on July 23, 1993, at 2:30 p.m. at the Federal Courthouse in Wichita, Kansas, courtroom 407.

## MEMORANDUM AND ORDER ON RECONSIDERATION

The court on its own motion decided to reconsider its order of February 2, 1993, in light of the recent case of *United States v. Woods,* 986 F.2d 669 (3rd Cir.1993), *petition for cert. filed,* 62 U.S.L.W. 3001 (U.S. June 21, 1993). At the court's request, the parties orally argued their respective positions on this recent case law and its applicability to the instant case. Having received no evidence, transcripts or additional briefs, the court considers the matter fully submitted and ready for ruling.

For purposes of *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Third Circuit does not consider a defendant to have suffered a miscarriage of justice unless convicted for acts that were not criminal under the statute. *Woods,* 986 F.2d at 676–77. Is the miscarriage significantly different or measurably less when a defendant is punished for conduct that is not punishable under the statute unless the subject of indictment and conviction? This court thinks not. Moreover, society's interest in finality is not as strong and the costs not as great when an illegal sentence is corrected as opposed to when a new trial is conducted. *See United States v. Bermudez,* 742 F.Supp.

556, 558–59 (C.D.Cal.1990). In sum, the *Hughey* decision affects the substantive scope of a federal statute and its retroactivity implicates to a lesser degree the finality concerns weighing against retroactivity. The court believes it properly applied the correct standard in its earlier order.[1]

The defendant has represented repeatedly that the amount of restitution appropriate under *Hughey* is $71,665.00. The government has never contested nor refuted the calculation of this amount. Unless a request is made within ten days for a separate proceeding with personal appearances, the court will consider this order as both vacating the prior order of restitution and substituting the sum of $71,665.00 as the restitution ordered against the defendant Savely.

IT IS SO ORDERED.

**Robert G. TILTON, an individual, Plaintiff,**

v.

**CAPITAL CITIES/ABC INC., a New York corporation; American Broadcasting Companies, Inc., a Delaware corporation; ABC News, Inc., a Delaware corporation; Diane Sawyer, an individual; Robbie Gordon, an individual; and Kelly Sutherland, an individual, Defendants.**

No. 92–C–1032–B.

United States District Court, N.D. Oklahoma.

May 13, 1993.

Sheila Miller Bradley, Ted J. Nelson, J.C. Joyce, John C. Joyce, Joyce & Pollard, Tulsa, OK, for plaintiff.

Floyd Abrams, Susan Buckley, David G. Januszewski, Cahill, Gordon & Reindel, New York City, Harvey D. Ellis, Jr., Clyde A. Muchmore, Anton J. Rupert, Crowe & Dunlevy, Oklahoma City, OK, W. Kyle Tresch, Crowe & Dunlevy, Tulsa, OK, for defendants.

---

**1.** Even if it were to follow the hybrid standard created in *Woods*, the court would still vacate the restitution order as the facts here differ materially from those facing the Third Circuit. The court cannot say with the same confidence as the Third Circuit that it heard evidence and followed procedures that firmly established the accuracy of the restitution order. Though disputed by the government at oral argument, the defendant appears to have contested the sufficiency of the evidence at sentencing and never conceded, expressly or impliedly, his liability to the victims. Unlike *Woods*, an order here modifying the amount of restitution will not require the government to disgorge any money and will not raise any issues of immunity barring the defendant's recovery of the money. Finally, Savely's liberty interests are involved to the extent that his pro-

---

bation could be revoked in the event that he does not in good faith make full payment.